UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| OFFICER JOHN DOE POLICE OFFICER | * | CIVIL ACTION NO: 16-742 |
| | * | |
| v. | * | CHIEF JUDGE |
| | * | BRIAN A. JACKSON |
| DeRAY McKesson; and | * | |
| BLACK LIVES MATTER | * | MAGISTRATE JUDGE |
| | * | RICHARD L. BOURGEOIS, JR. |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## JOINT STATUS REPORT

**A.    JURISDICTION**

Subject Matter - Jurisdiction is conferred upon this court by the provisions of 28 U.S.C. § 1343 (3), the jurisdictional counterpart of 42 U.S.C. § 1983, and 28 U.S.C. § 1331.  Supplemental jurisdiction is conferred upon this court over the state law claims pursuant to 28 U.S.C. § 1367 (a).

**B.    BRIEF EXPLANATION OF THE CASE:**

   **1.    Plaintiff's Claims:**

On July 7, 2016, Lakeem Keon Scott shot at passing cars along a Tennessee highway, killing one woman and wounding three others, including a police officer while yelling, "police suck! Black lives matter!"

On July 5, 2016, Alton Sterling was shot and killed by a Baton Rouge Police Officer, which started a flurry of activity by DEFENDANTS.

On July 7, 2016, 12 police officers in Dallas Texas were shot. Activities of BLACK LIVES MATTER was associate with the shooting.  The shooting in Dallas occurred around 9:00 p.m., on July 7, 2016, at a "Black Lives Matter" protest/riot during which at least one sniper shot twelve (12) police officers that were on duty to keep the peace at the rally. Five officers were killed and seven were seriously injured.

On Saturday, July 9, 2016, **OFFICER JOHN DOE POLICE OFFICER** was a duly commissioned police officer, who was ordered to respond to a protest, march and

By July 9, 2016, Defendants were in Baton Rouge for the purpose of staging a protest. Protests in other cites staged by Defendants resulted in violence and property loss. DEFENDANTS conspired to violate the law by planning to block a public highway.

DEFENDANTS were in Baton Rouge for the purpose of demonstrating, protesting and rioting to incite others to violence against police and other law enforcement officers. The Defendants announced that they would stage a protest/demonstration at the intersections of Airline Highway and Goodwood Boulevard, which is the location of the Baton Rouge Police Department and which is a known public highway.

The protest was called a demonstration that was organized by the DEFENDANTS. At all time, DEFENDANTS knew police would be called to clear the public highway of protestors. Anticipating violence and property loss Baton Rouge Police Department arranged for a front line of officers in riot gear that formed a shield around officers who were to effectuate arrests and removal of Defendants from the public highway.

OFFICER was one of the police officers who was ordered to make arrests. At the beginning the protest was peaceful until activist began pumping up the crowd. DeRay McKesson was in charge of the protests and he was seen and heard giving orders throughout the day and night of the protests.

The protest turned into a riot. DEFENDANTS and their membership began to loot a Circle K and one of the items taken was plastic full water bottles, which Defendants began to hurl at the police who were in riot gear and hurl over the line of police in riot gear to strike the police who were behind the protective shield formed by the officers in riot gear.

Officers were struck by the full water bottles.

Defendant DeRay McKesson was present during the protest and he did nothing to calm the crowd and, instead, he incited the violence on behalf of the Defendant BLACK LIVES MATTER. When the Defendants ran out of the water bottles they were throwing at the Baton Rouge City Police, a member of Defendant BLACK LIVES MATTER, under the control and custody of the DEFENDANTS, then picked up a piece of concrete or similar rock like substance and hurled into the police that were making arrests.

OFFICER was struck fully in the face and immediately knocked down and incapacitated. OFFICER'S injuries include loss of teeth, injury to jaw, injury to brain and head as well as lost wages and other compensable losses.

In the alternative, these DEFENDANTS have similarly attacked other businesses and other persons while protesting/rioting. Following the violence, DEFENDANTS took credit/blame for the protest and riot.

On Sunday, DeRay McKesson told the New York Times, "The police want protesters to be too afraid to protest." He suggested that he intended to plan more protests. It was unreasonable for Defendant(s) to use force on OFFICER when he was not threatening any of them and performing lawful duties under color of law.

During the riot, DeRay McKesson was arrested and the status of those charges are unknown. The following claims for relief are pled collectively and in the alternative. The DEFENDANTS knew or should have known that the physical contact and riot and demonstration that they staged would become violent as other similar riots had become violent and thus DEFENDANTS knew or should have know that violence would result especially after they began assaulting police, they knew or should have known their actions

could cause and/or lead to serious personal injury.

Plaintiff seeks relief under La. C.C. arts. 2315 and 2317 of the Louisiana Civil Code, which injuries were occasioned by the intentional and/or negligent acts and/or omissions of the Defendant(s) herein.

Pursuant to La. C.C. art. 2317, Defendants are liable for the actions of the BLACK LIVES MATTER membership, which caused the injuries herein.

Pursuant to La. C.C. art. 2324, the Defendant are liable in solido for the injuries caused to OFFICER for their intentional actions and for conspiring to incite a riot/protest and other damages.

## 2.   Defendant Claims:

On July 9, 2016, defendant Mr. DeRay McKesson and hundreds of other individuals attended a protest in Baton Rouge, Louisiana in the aftermath of the death of Alton Sterling. Officer John Doe—an unnamed individual who has filed the instant lawsuit anonymously—contends that he was injured during that protest by an unknown assailant who hit him in the face with a piece of concrete. Rec. Doc. 1, ¶ 20. Officer Doe further contends that Mr. McKesson is responsible for the actions of this unknown assailant and therefore liable for Officer Doe's injuries.

In making this claim, Officer Doe sets forth a number of unsupported, speculative conclusions. In particular, Officer Doe alleges:

(1)   that Mr. McKesson was in Baton Rouge "for the purpose" of "rioting to incite others to violence against police and other law enforcement officers," id. at ¶ 11;

(2)   that Mr. McKesson "organized" the protest that took place on July 9, 2016,

        id. at ¶ 13;

(3)      that Mr. McKesson "was in charge of the protest," gave "orders throughout the day and night," and "incited the violence," id. at ¶ 17-19; and

(4)      that the unknown assailant who injured Officer Doe was "under the control and custody" of Mr. McKesson, id. at ¶ 20.

Officer Doe fails, however, to plead any facts in support of these speculative conclusions. Mr. McKesson denies any involvement in the assault upon Officer Doe and has filed a motion to dismiss Officer Doe's complaint for failure to state a claim.

### C. PENDING MOTIONS:

**Plaintiff:**

Motion to Proceed as John Doe [RD 2] and Rule 4m motion [RD 18].

**Defendants:**

Mr. McKesson filed a motion to dismiss on January 25, 2017 contending that Officer Doe's complaint consists entirely of speculative allegations. In particular, Officer Doe fails to plead any specific facts that would allow a fact finder to conclude that Mr. McKesson "controlled" the unknown assailant who injured Officer Doe.

### D. ISSUES

**Plaintiff:**

1.      Was there negligent conduct?

2.      Did the negligent conduct cause injury?

3.      Extent of any injury and amount proper as compensation.

**Defendant:**

1. Whether Mr. McKesson was "in charge of" the protest that took place in Baton Rouge on July 9, 2016.

2. Whether Mr. McKesson had any duty toward the plaintiff and, if so, whether he breached that duty.

3. Whether Mr. McKesson is the proximate cause for the plaintiff's injuries.

4. Whether the unknown assailant who injured Officer Doe was "under the control and custody" of Mr. McKesson.

5. Whether the unknown assailant was a "member" of the Black Lives Matter movement.

6. Whether the Black Lives Matter movement is a juridical entity capable of being sued, and even if it is, whether Mr. McKesson is liable for acts of participants in the Black Lives Matter movement.

**E.   DAMAGES**

Separately, for each party who claims damages or an offset, set forth the computation of damages or the offset:

**4.   Plaintiff's calculation of damages:**

The Plaintiff suffered acute injury and multiple serious and prolonged injury which include but are not limited to his neck, and face, discomfort, humiliation, pain and suffering, mental and emotional injury, medical and pharmaceutical expenses, and future lost wages.

a. Physical pain and suffering;
b. Physical injuries;

    c.      For emotional and mental distress, pain and suffering, humiliation, embarrassment and loss of employment opportunities;

    d.      Medical, hospital and pharmaceutical bills and services past, present, and future;

    e.      inconvenience;

    f.      Future lost wages;

    g.      All litigation expenses; and

    h..     For such other relief that the Court may deem just, equitable, or proper.

**Defendants' calculation of damages:**

Defendant Mr. McKesson unaware of the extent of damages, if any, allegedly sustained by the Plaintiff.

**3.    Counterclaimant/cross claimant/third party's calculation of damages:**

Not applicable

**F.    SERVICE:**

**Plaintiff:**

It is unclear as to whether Mr. McKesson was served with a waiver of service for Black Lives Matter. The sheriff has been to Mr. McKesson's home multiple times to attempt to serve him personally as a managing member of Black Lives Matter. The waiver of service was not returned. Additional information may be obtained through discovery of Mr. McKesson to obtain his current residential address and/or whereabouts to effectuate service of process.

**Defendants:**

Defendants: The plaintiff has attempted to serve defendant Mr. McKesson as a representative or agent of the Black Lives Matter movement. Mr. McKesson does not believe that the Black Lives Matter movement is a juridical entity capable of being sued. Even if the Black Lives Matter movement could be sued, Mr. McKesson is not the appropriate person to accept service.

**G.    DISCOVERY**

1.    Initial Disclosures:

A.    Have the initial disclosures required under FRCP 26(a)(1) been completed?

**By Plaintiff:**

[ X ] YES    [ ] NO

**By Defendants:**

[ ] YES    [ X ] NO

In accordance with Local Rule 26(b), the parties shall provide their initial disclosures to the opposing party no later than 7 days before the date of the scheduling conference, unless a party objects to initial disclosures during the FRCP 26(f) conference and states the objection below.

B.    Do any parties object to initial disclosures?

[ ] YES    [ X ] NO

For any party who answered yes, please explain your reasons for objecting.

2.    Briefly describe any discovery that has been completed or is in progress:

**Plaintiff:**

Plaintiff intend to take the deposition of Mr. McKesson as soon as is possible and to propound written discovery upon him. Plaintiff requires discovery to locate Mr. McKesson or any other member of Black Lives Matter to effectuate personal service of the summons upon him as a member of Black Lives Matter.

**Defendants:**

Due to the pending motion to dismiss no discovery has been taken at this time.

3. Please describe any protective orders or other limitations on discovery that may be required/sought during the course of discovery. (For example: are there any confidential business records or medical records that will be sought? Will information that is otherwise privileged be at issue?)

**Plaintiff:**

None at this time.

**Defendants:**

None at this time. Defendants intend to file a motion to stay discovery pending a ruling on the motion to dismiss.

4. Discovery from experts:

Identify the subject matter(s) as to which expert testimony will be offered:

    **Plaintiff:** It may be necessary for Plaintiff to retain a medical or non-medical expert. Plaintiff reserve the right to retain any experts as needed throughout this litigation.

    **Defendants:** Defendant retains any right to rebut any expert that may be offered by the Plaintiff.

**H.**   **PROPOSED SCHEDULING ORDER**

1. If the parties propose an alternative time frame for exchanging initial disclosures, please provide that proposed deadline:

   **Both Parties:**

   February 15, 2017

2. Recommended deadlines to join other parties or to amend the pleadings:

   **Both Parties:**

   May 15, 2017

3. Filing all discovery motions and completing all discovery except experts:

   **Both Parties:**

   July 3, 2017

4. Disclosure of identities and resumes of expert witnesses (if appropriate, you may suggest different dates for disclosure of experts in different subject matters):

   **Both Parties:**

   Plaintiff:     August 1, 2017

   Defendant:   September 1, 2017

5. Exchange of expert reports:

   **Both Parties:**

   Plaintiff:     August 1, 2017

   Defendants:  September 1, 2017

6. Completion of discovery from experts:

        **Both Parties:**      October 16, 2017

7.     Filing Dispositive motions and Daubert motions:

        **Both Parties:**      November 15, 2017

8.     All remaining deadlines and the pre-trial conference and trial date will be included in the initial scheduling order. The deadlines will be determined based on the presiding judge's schedule, within the following general parameters.1[11] The parties should not provide any proposed dates for these remaining deadlines.

    a.     Deadline to file pre-trial order (approximately 16 weeks after dispositive motion deadline).

    b.     Deadline to file motions *in limine* (approximately 20-22 weeks after dispositive motion deadline).

    c.     Deadline to file responses to motions *in limine* (approximately 22-24 weeks after dispositive motion deadline).

    d.     Deadline to file an affidavit of settlement efforts (approximately 22-24 weeks after dispositive motion deadline).

    e.     Deadline to submit joint jury instructions, *voir dire*, verdict forms, and trial briefs to the presiding judge (approximately 25-27 weeks after dispositive motion deadline).

    f.     Pre-trial conference date (approximately 18-20 weeks after dispositive motion deadline).

---

[11] The date ranges provided for the new deadlines, pre-trial conference, and trial date are a general guideline only. The actual dates may vary depending on the complexity of a particular case. All requests for subsequent changes to the deadlines set in the scheduling order under number 7 must be by motion directed to the presiding judge.

g. Trial date (approximately 27-29 weeks after dispositive motion deadline).

9. If the general outline of proposed deadlines does not fit the circumstances of your particular case, please provide a proposed joint schedule of deadlines which is more appropriate for your case.

**I.  TRIAL**

1. Has a demand for a jury trial been made?

   [X] Yes    [ ] No

2. Estimate the number of days that trial will require.

   **Plaintiff:**   3 days.

   **Defendants:**

**J.  OTHER MATTERS**

1. Are there any other specific problems the parties wish to address at the scheduling conference:

   [ ] Yes    [x] No

2. If the answer is *no*, do the parties want the court to cancel the scheduling conference and to enter a scheduling order based on the deadlines set out in the report?

   [ ] Yes    [ ] No

**K.  SETTLEMENT**

1. Please set forth what efforts, if any, the parties have made to settle this case. None at this time.

2. Do the parties wish to have a settlement conference?

[ ] Yes      [ ] No

Plaintiff is always willing to discuss settlement.

**L.  CONSENT TO JURISDICTION BY A MAGISTRATE**

You have the right to waive your right to proceed before a United States District Judge and may instead consent to proceed before a United States Magistrate Judge.

Indicate whether, at this time, all parties will agree, pursuant to 28 U.S.C. § 636©), to have a Magistrate Judge handle all the remaining pretrial aspects of this case and preside over a jury or court trial, with appeal lying to the United States Court of Appeals for the Fifth Circuit.

All parties agree to the jurisdiction by a Magistrate Judge of this court:

[ ] YES     [ x ] NO

Report Dated:  February 3, 2017

                    Respectfully submitted:

                    s/ Donna U. Grodner
                    Donna U. Grodner (20840)
                    GRODNER & ASSOCIATES
                    2223 Quail Run, B-1
                    Baton Rouge, Louisiana 70808
                    (225) 769-1919 FAX (225) 769-1997
                    dgrodner@grodnerlaw.com

CERTIFICATE

I hereby certify that on February 3, 2017, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to counsel named below by operation of the court's electronic filing system.  I also certify that I have mailed by United States Postal Service this filing to the parties marked

non-CM/ECF participants:

                                          s/Donna Grodner
                                          Donna U. Grodner (20840)
                                          GRODNER & ASSOCIATES
                                          2223 Quail Run Drive, B-1
                                          Baton Rouge, Louisiana 70808
                                          (225) 769-1919 FAX (225) 769-1997
                                          Email: dgrodner@grodnerlaw.com