UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| OFFICER JOHN DOE POLICE OFFICER | CIVIL ACTION NO: 16-742 |
| v. | CHIEF JUDGE |
| | BRIAN A. JACKSON |
| DeRAY McKESSON; and | |
| BLACK LIVES MATTER | MAGISTRATE JUDGE |
| | RICHARD L. BOURGEOIS, JR. |

*******************************************************************

## SUR REPLY TO MEMORANDUM IN REPLY TO DEFENDANT'S MOTION TO DISMISS

MAY IT PLEASE THE COURT:

On February 12, 2017, the Mr. DeRay McKesson filed *Reply Memorandum in Support of Defendant DeRay McKesson's Motion to Dismiss* [RD 29], wherein Mr. McKesson avers that Claiborne case[1] in not only controlling, but that Officer John Doe did not address that case. A sur-reply may assist this court with the adjudication of this matter.

The lesson from Claiborne is that, as a matter of law, although mere membership in a voluntary association does not make all members liable for their acts of their associates done without their knowledge or approval, a member may be liable without personal participation in the tortious act if he sets the proceedings in motion or agrees to a course of action which culminates in wrongful conduct.

Mr. McKesson wrote that "Nor does Officer Doe address NAACP v. Claiborne Hardware Co.",[2] which is not wholly correct. The bulk of Office Doe's opposition addresses the allegations in the Complaint of criminal conduct, inciting criminal conduct and the intent to commit a crime and incite violence shown by Mr. McKesson and Black Lives Matter.

---

[1] Under the Erie Doctrine, this case is governed by state law even where other state's law and federal cases at common law are helpful.

[2] See *Reply Memorandum in Support of Defendant DeRay McKesson's Motion to Dismiss* [RD 29, at 1].

In NAACP v. Claiborne Hardware Co., 458 U.S. 886, the Supreme Court reversed and remanded on the basis that has a matter of fact the majority of petitioners and their activities **had been nonviolent** and were entitled to constitutional protection. The Supreme Court held that **only those who took part in the unlawful activity** could be held liable and only those losses proximately caused by the unlawful conduct could be recovered.[3]

In this case, Officer Doe alleged that McKesson and the other members of Black Lives Matter were engaged in and incited others to engage in unlawful activities that caused in jury to Officer Doe.

In Claiborne, the Supreme Court explained that because the appellees were engaging in protected expressive activities, where they were at the same time and to the same end engaged in alleged threats of violence, the appellees were **not immunize from liability** for the alleged threats. The Court held that NAACP official Charles Evers could not be held liable for a public speech, but the Court stated unequivocally that individuals who "engaged in violence or threats of violence may be held responsible for the injuries that they caused."[4]  The Court further reasoned[5] that the fact that appellees were politically motivated **did not immunize them from liability if they in fact engaged in threats of violence**.  Once again, here, Officer Doe alleged that Mr. McKesson and Black Lives Matter were engaged in criminal conduct and that they incited the violence.

At this point in this proceeding, Officer Doe is not required to support the allegations

---

[3] NAACP v. Claiborne Hardware Co., 458 U.S. 886, 888, 102 S. Ct. 3409, 3413, 73 L. Ed. 2d 1215, 1220, 1982 U.S. LEXIS 49, *1, 50 U.S.L.W. 5122 (U.S. 1982).

[4] Claiborne, 458 U.S. 886 at 926, 73 L. Ed. 2d 1215, 102 S. Ct. 3409.

[5] Citing, Rankin v. McPherson, 483 U.S. 378 at 386-87, 97 L. Ed. 2d 315, 107 S. Ct. 2891 (1987) ("a statement that amounted to a threat to kill the President would not be protected by the First Amendment").

2

in his complaint. At this point, the issue is whether those allegations are sufficient to survive a motion to dismiss.[6] For liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims.[7] Much like Claiborne, Officer Doe alleged and directed this Court to the allegations in his Complaint that the goals of the protest were not merely to demand justice, but instead were to violate the law and engage the Baton Rouge Police.

In Ermert v. Hartford Ins. Co., 559 So. 2d 467, 468 (La. 1990), the plaintiff, while cooking at a hunting camp, was shot in the foot by another hunter, who was the employee of another hunter. The Plaintiff sued the unincorporated hunting club, the hunter who shot him, and the hunter's employer, who was also on the trip. The Trial Court held the employee and the employer hunters liable after finding the employee-hunter was in the course and scope at the time. The Fourth Circuit reversed finding that the employee hunter and the unincorporated hunting club was liable. The Louisiana Supreme Court reinstated the judgment of the Trial Court.

Importantly, the Louisiana Supreme Court addressed the liability of unincorporated associations and wrote:[8]

> Under both civilian and common law theory, an unincorporated association is created in the same manner as a partnership, by a contract between two or more persons to combine their efforts, resources, knowledge or activities for a purpose other than profit or commercial benefit. See United

---

[6] McCalden v. California Library Ass'n, 955 F.2d 1214, 1222, 92 Cal. Daily Op. Service 758, 92 Daily Journal DAR 1152, 22 Fed. R. Serv. 3d (Callaghan) 975 (9th Cir. Cal. 1992).

[7] NAACP. v. Claiborne Hardware Co., 458 U.S. 886, 887, 102 S.Ct. 3409, 3412, 73 L.Ed.2d 1215 (1982)

[8] Ermert v. Hartford Ins. Co., 559 So. 2d 467, 473 (La. 1990).

      Brotherhood of Carpenters Local 1846 v. Stephens Broadcasting Co., 214 La. at 938, 39 So. 2d at 425 (the charter, constitution and by-laws of an association "constitute and are the contract between the members and the association"); 2 M. Planiol & G. Ripert, supra, No. 1988; E. Church, BUSINESS ASSOCIATIONS UNDER FRENCH LAW § 1, at 3 (1961); H. Smith, THE LAW OF ASSOCIATIONS 18 (1914); cf. La. C.C. art. 2801 ("A partnership is a juridical person . . . created by a contract").  Except as otherwise provided by law, the contract of association is governed by the Civil Code provisions pertaining to conventional obligations. 2 M. Planiol & G. Ripert, supra, No. 2007; cf. La. C.C. art. 2802. Planiol describes the essential nature of the contract as follows: **The association is the contract by which several persons put in common their activity and in case of need, revenue or capital with a purpose other than to share in the benefits. This contract permits the attainment of a purpose or the exercise of influence, which for individual persons acting alone would be more difficult or even impossible.** [Emphasis added]

In this instance, the issue at hand is the liability of Mr. McKesson a leader of Black Lives Matter, for inciting a criminal conduct that caused injury.

In <u>Keenan v. Aryan Nation,</u>[9] representatives of the Aryan Nation, an unincorporated association, working on a compound shot at and into the car of the plaintiffs and physically assaulted them. The Aryan Nation was held liable for the serious injuries sustained by the criminal acts of a few. The leader of the organization, Richard Butler, was found grossly negligent in the selection and supervision of those acting on behalf of this group, and the guards were liable for their criminal acts. Since Butler was the acting as an agent of Aryan Nation and any act of omission by him was considered an act of omission by the Aryan Nations creating vicarious liability.  The Aryan Nation was categorized as principals and the court followed the doctrine of respondent superior where, "an employer or master is responsible for the torts of its employee or servant when the torts are committed within the

---

[9] Keenan v. Aryan Nations: MAKING HATE GROUPS LIABLE FOR THE TORTS OF THEIR MEMBERS, 37 IDAHO L. REV. 603, 621 (2001).

scope of the employee's or servant's employment."[10]  The same rule of law applies in Louisiana.  In Ermert, the Louisiana Supreme Court wrote:[11]

> Masters and employers are answerable for the damage caused by their servants in the exercise of the functions in which they are employed. La. C.C. art. 2320; La. C.C. art. 176 (1870). **Both the civilian master-servant doctrine and its common law counterpart, vicarious or imputed liability or respondeat superior, are based on Roman law**. See Blanchard v. Ogima, 253 La. 34, 42-44, 215 So. 2d 902 (1968); Holmes, Agency (pt. 1), 4 Harv. L. Rev. 345, 349-51 (1891). **The history and parallel development of these doctrines are so similar that the common law does not represent a departure from our civilian law in this field**. Blanchard v. Ogima, supra. Consequently, our jurisprudence has drawn freely from the common law in applying the general code principles to concrete master-servant problems.  Le Brane v. Lewis, 292 So. 2d 216 (La. 1974); Blanchard v. Ogima, supra. A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.  Blanchard v. Ogima, supra; Restatement (2d) of Agency § 220(1) (1958). The word "servant" does not exclusively denote a person rendering manual labor; rather, it includes anyone who performs continuous service for another and whose physical movements are subject to the control or right to control of the other as to the manner of performing the service. [Emphasis added]

In the present matter, Black Lives Matter was the principal of which Mr. McKesson, the agent and its leader.  As the leader, Mr. McKesson was acting on behalf of Black Lives Matter while engaging and inciting Black Lives Matter and others to engage in criminal conduct. It is clear he was a representative of the organization and the criminal act of obstructing a major highway set into motion more illegal acts of the Black Lives Matters members in attendance and they should be held liable.

In United States by Katzenbach  v. Original Knights of the Ku Klux Klan, 250

---

[10] Keenan v. Aryan Nations: MAKING HATE GROUPS LIABLE FOR THE TORTS OF THEIR MEMBERS, 37 Idaho L. Rev. 603, 621 (2001).

[11] Ermert v. Hartford Ins. Co., 559 So. 2d 467, 475-476 (La. 1990).

F.Supp. 330 (E.D. La. 1965), a case out of Washington Parish, where the criminal acts committed by the KKK organization included battery, assault, threats of violence, harassment of those exercising their rights to vote. The Court found their activities beared a pattern and practice of criminal and unlawful conduct and held an injunction would be appropriate against the unincorporated association.

In Person v. Caroline Knights,[12] a citizen filed suit against an unincorporated organization for the criminal acts by its member inflicted upon his family and himself. The criminal conduct included varying threats of violence, threats by brandishing weapons, and harassment. Glenn Miller, the founder of the organization was held responsible for the criminal conduct of his members and issued an order prohibiting the organizations operation. This case was the start of states placing limitations on the actions of hate groups.

In Ogea v. Merritt, 20131085 (La. 12/10/13), 130 So.3d 888, the Louisiana Supreme Court analyzed the criminal conduct factor which could be applicable in this matter. In Ogea, a unincorporated association was found liable for damages even though the criminal acts were not a pertinent factor.  Where a civil claimant is able to show that the members of a limited liability company engaged in criminal fraudulent conduct those allegations were sufficient to state a cause of action against the association for damages under contract. The court viewed negligence as a statutorily-recognized element of certain crimes and a "wrongful act" can be the product of specific or general criminal intent. Therefore, if the conduct at issue constitutes a crime, that fact weighs in favor of the "negligent or wrongful

---

[12] Person v. Carolina Knights of the Ku Klux Klan, 84-534 (E.D. N.C. 1994).

act" exception and in favor of allowing the victim(s) to recover against the offender.

In Independent Fire Insurance Co. v. Able Moving and Storage Company, Inc., 94 1982 (La. 2/20/95), 650 So.2d 750, a customer sued a moving company for the negligent acts of one of their employees. The court held, the national company was liable under the doctrine of apparent authority. Independent Fire found that apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons.[13] "Agency" is the relationship resulting from the manifestation of consent by one to another that the other shall act on his behalf and subject to his control and consent by the other so to act.[14] Officer Doe alleged that Mr. McKesson is a leader of Black Lives Matter. His inciting the protesters to violence is an act on behalf of the Black Lives Matter, which renders him liable for injuries.

In Guyton v Howard, 525 So. 2nd 948, Fla. L. Weekly 1094 (Fla. App. 1 Dist. 1988), the plaintiff was injured during an initiation ceremony conducted by members of an unincorporated association. The court held issue of whether members of unincorporated association were liable for injuries sustained during initiation ceremony was for jury. That Court reasoned that although mere membership in a voluntary association does not make all members liable for their acts of their associates done without their knowledge or approval, a member may be liable without personal participation in the tortious act if he sets the proceedings in motion or agrees to a course of action which culminates in wrongful

---

[13] Indep. Fire Ins. Co. v. Able Moving & Storage Co., Inc., 94 1982 (La. 2/20/95), 650 So.2d 750. Restatement (Second) of Agency § 8 (1958).

[14] Gorton v. Doty, 57 Idaho 792, 69 P.2d 136 (1937).

7

conduct. Vicarious liability must show that the persons must have taken an active part in the criminal act resulting in the injury or in some manner had knowledge of the criminal act resulting in the injury and gave assent or encouraged to the use thereof. The liability of a member of an unincorporated association is based upon his direct, active negligence, whether it takes the form of an act or a failure to act. Conduct for which liability could be found included "if he sets the proceedings in motion or agrees to a course of action which culminates in wrongful conduct.[15]   The Ermert wrote that Louisiana Law follows the common law on vicarious liability.[16]

In Feldman v. North British & Mercantile Co., 137 F.2d 266, 268 (4th Cir.1943), a store owner was accused and arrested for arson after his store burned down shortly after he gained approval for insurance coverage. An agent of an unincorporated association (National Board of Underwriters) of which the insurance company was a member, made a serious but false allegations which led to Feldman's arrest and prosecution. The Fourth Circuit of Appeals held, the liability of a member may exist without personal participation in the unlawful act of a voluntary association if the members sets the proceedings in motion or agrees to a court of action which culminates the wrongful act.

Here, Officer Doe alleges that McKesson, as an agent for Black Lives Matter, was personally involved with an unlawful act and set into motion a protest staged on a public highway where criminal acts were completed. Although he may not have physically thrown the object injuring Office Doe, liability rests on his shoulders as though he himself threw

---

[15] Short v. Ross, X10UWYCV126023797, 2015 WL 5981142, at *7 (Conn. Super. Ct. Sept. 16, 2015)

[16] Ermert v. Hartford Ins. Co., 559 So. 2d 467, 475-476 (La. 1990).

that rock with his own hand. Mr. McKesson, is alleged to have incited the crowd and set into motion the action which led to the wrongful act which caused serious injury.

## CONCLUSION

Officer Doe has stated a cause of action against Mr. McKesson as a member and leader of Black Lives Matter for the injuries he sustained during a violent protest.

Respectfully submitted:

s/ Donna U. Grodner
Donna U. Grodner (20840)
GRODNER & ASSOCIATES
2223 Quail Run, B-1
Baton Rouge, Louisiana 70808
(225) 769-1919 FAX (225) 769-1997
Dgrodner@grodnerlaw.com


Denise A. Vinet (17185)
VINET & DAY, LLC
11817 Bricksome Ave., Ste A
Baton Rouge, Louisiana 70816
(225) 292-7410 FAX (225) 292-4149

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2017, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to counsel for the defendants by operation of this Court's electronic filing system.

s/ Donna U. Grodner
Donna U. Grodner (20840)
GRODNER & ASSOCIATES
2223 Quail Run, B-1
Baton Rouge, Louisiana 70808
(225) 769-1919 FAX (225) 769-1997