UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| OFFICER JOHN DOE POLICE OFFICER | CIVIL ACTION NO: 16-742 |
| v. | CHIEF JUDGE |
| | BRIAN A. JACKSON |
| DeRAY McKESSON; and | |
| BLACK LIVES MATTER | MAGISTRATE JUDGE |
| | RICHARD L. BOURGEOIS, JR. |

*********************************************************************

### OPPOSITION TO DEFENDANT DERAY MCKESSON'S MOTOIN TO DISMISS PURSUANT TO FRCP 9 (a)

MAY IT PLEASE THE COURT:

On April 7, 2017, Mr. DeRay McKesson filed *Defendant DeRay McKesson's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 9(a)*, which should be denied. Mr. McKesson's motion avers that it is brought on behalf of himself, but in actuality the motion is a Rule 12(b)(4) motion for insufficiency of service brought on behalf of Black Lives Matter.

This Court should deny the motion to dismiss filed by Mr. DeRay McKesson. Service was proper. Information publically available indicates that Black Lives Matter is a juridical entity. Under Louisiana law unincorporated associations may be sued and served.

Pursuant to Rule 12 (b) an exception of insufficiency of service is now untimely. Rule 12 requires that a motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. Pursuant to Rule 12 (h) a party waives any defense listed in Rule 12 (b)(2)-(5) including insufficiency of service by omitting that defense from the initial Rule 12 motion. As this Court is aware, McKesson previously filed a motion to dismiss [RD 15, 21, 29, 38], which is currently under submission.

Additionally, Rule 9 does not apply to the motion Mr. McKesson is raising, because the issue he is raising is a service of process issue, and not a capacity issue on his own behalf. Mr. McKesson was sued as an individual. Black Lives Matter was sued in its capacity as an unincorporated association that was served through members. [RD 33, 40, 41]

To the extent that the motion Mr. McKesson was filed on behalf of Black Lives Matter, Rule 9 provides that generally, the federal rules have no legal requirement to plead the capacity of a party to be sued.  If a party sued, such a Black Lives Matter, seeks to challenge its capacity to be sued, it must do so "by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge."  Fraud has not been pled in this case.  Rule 9 does not apply.

To the extent that this Court may in the exercise of its discretion entertain this motion, the substance of the motion is addressed herein.

Mr. McKesson wrote, "Mr. Mckesson is not a proper agent for service of 'Black Lives Matter and the complaint against 'Black Lives Matter' should be dismissed pursuant to Rule 9(a) of the Federal Rules of Civil Procedure because Mr. Mckesson does not have the authority to "be sued in a representative caption" on behalf of "Black Lives Matter', which is a movement and not a juridical entity capable of being sued."

The Complaint [RD 1, at 2, ¶ 3, provides the following:

**DEFENDANTS:**
    **DeRAY McKESSON**, is a major, who is a resident of the State of Maryland and who during material times herein was a leader and co-founder of the national unincorporated organization that is known as "BLACK LIVES MATTER" and who during all material times in July 2016 while he was in Baton Rouge Louisiana was acting on behalf of BLACK LIVES MATTER and who lead the protest and violence that accompanied the protest in Baton Rouge Louisiana that took place outside the Baton Rouge Police Department located in the old Woman's Hospital on Airline Highway and who is amenable to service of process personal at his home in Baltimore, Maryland or where ever he may be found.
    **BLACK LIVES MATTER**, is a national unincorporated association with chapter in many states and which in July 2016 staged a protest, blocking of a public highway, looting of a Circle K, throwing of items stolen and violence towards police in Baton Rouge, Louisiana, and which is amenable to service of process through a managing member.  DeRay McKesson is a managing member of BLACK LIVES MATTER.

Pursuant to Rule 9, where Mr. McKesson seeks to challenge the capacity of Black Lives Matter to be sued, he must "do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge."  See, Rule

9(a)(2).

The Complaint [Rd 1, at 2, ¶ 4, provides the following:

> BLACK LIVES MATTER was created by Alicia Garza, Patrisse Cullors, and Opal Tometi. The leaders of BLACK LIVES MATTER are RASHAD TURNER, JOHNETTA ELZIE and DeRAY McKESSON.

To date, Mr. McKesson has not filed an answer or in any manner denied these allegations found in paragraphs 3 and 4 of the Complaint. Furthermore, no discovery has been had in the matter due to a stay entered. [RD 27]

Although discovery has not transpired at this time, information publically available on the internet supports a strong *prima facie* case that Black Lives Matter is a thriving, if not very wealthy, unincorporated association. Internet research revealed that Black Lives Matter has several chapters nationwide including a chapter in Louisiana. Ex 1 and 2. Black Lives Matter has its own face book account, where it represents itself as a "nonprofit organization." [Ex 3 and 7] Black Lives Matter is actively soliciting donations and it, also, sells T-shirts for profit. [Exs 1 and 4] Black Lives Matter has received more than 100 million dollars in donations, so it obviously has a bank account. [Ex 5] It further appears Black Lives Matter has applied for grant funds. [Ex 5]

To say that Black Lives Matter does not exist is simply untrue.

Mr. McKesson wrote that Black Lives Matter has "no hierarchy";[1] yet, Mr. McKesson's Wikipedia page specifically recognizes him as leader of Black Lives Matter. [Ex 6] Discovery should be taken to verify all of these internet claims and to find out about the bank accounts and whether the T-shirt sales do generate money for Black Lives Matter. [Ex 1] If Black Lives Matter does not exist, it should not be raising money or collecting millions in donations. Among other facts to be discovered, discovery should be had as to who has authority to spend the money and whether any was spent on the plane tickets and housing for the many Black Lives Matter members who were in Baton Rouge to protest on

---

[1] See BLM memo, at 2, last paragraph, [RD 43-1].

the weekend of July 9,2016. [Ex 8] Where did the money come from to bail the arrested members of Black Lives Matter out of jail? Who paid for the transportation and lodging?

Mr. McKesson also wrote that Black Lives Matter does not have a governing body, yet, somehow numerous members were able to organize themselves on multiple occasions to protest in different cities, including Baton Rouge, Louisiana. Some discovery needs to be had, because not only is someone managing the web-page for Black Lives Matter, selling T-shirts, collecting money, but they are also funding protests. Discovery needs to be had on these issues to verify them.

With regard to service on Black Lives Matter, Federal Rule of Civil Procedure Rule 4 allows use of local state court service rules. FRCP 4(e) provides the following instruction:

> (e) Serving an Individual Within a Judicial District of the United States. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.
>
> La. C.C. art. 1264, entitled "Unincorporated association" provides the following:
>
> Service on an unincorporated association is made by personal service on the agent appointed, if any, or in his absence, upon a managing official, at any place where the business of the association is regularly conducted. In the absence of all officials from the place where the business of the association is regularly conducted, service of citation or other process may be made by personal service upon any member of the association.
>
> Louisiana law specifically recognized unincorporated associations as juridical

entities with capacity to sue and be sued.

In Ermert v. Hartford Ins. Co., 559 So. 2d 467, 468 (La. 1990), the plaintiff, while cooking at a hunting camp, was shot in the foot by another hunter, who was the employee of another hunter. The Plaintiff sued the unincorporated hunting club, the hunter who shot him, and the hunter's employer, who was also on the trip. The Trial Court held the employee and the employer hunters liable after finding the employee-hunter was in the course and scope at the time. The Fourth Circuit reversed finding that the employee hunter and the unincorporated hunting club was liable. The Louisiana Supreme Court reinstated the judgment of the Trial Court.

Importantly, the Louisiana Supreme Court addressed the liability of unincorporated associations and wrote:[2]

> Under both civilian and common law theory, an unincorporated association is created in the same manner as a partnership, by a contract between two or more persons to combine their efforts, resources, knowledge or activities for a purpose other than profit or commercial benefit. See United Brotherhood of Carpenters Local 1846 v. Stephens Broadcasting Co., 214 La. at 938, 39 So. 2d at 425 (the charter, constitution and by-laws of an association "constitute and are the contract between the members and the association"); 2 M. Planiol & G. Ripert, supra, No. 1988; E. Church, BUSINESS ASSOCIATIONS UNDER FRENCH LAW § 1, at 3 (1961); H. Smith, THE LAW OF ASSOCIATIONS 18 (1914); cf. La. C.C. art. 2801 ("A partnership is a juridical person . . . created by a contract"). Except as otherwise provided by law, the contract of association is governed by the Civil Code provisions pertaining to conventional obligations. 2 M. Planiol & G. Ripert, supra, No. 2007; cf. La. C.C. art. 2802. Planiol describes the essential nature of the contract as follows: **The association is the contract by which several persons put in common their activity and in case of need, revenue or capital with a purpose other than to share in the benefits. This contract permits the attainment of a purpose or the exercise of influence, which for individual persons acting alone would be more difficult or even impossible.** [Emphasis added]

In this instance, the issue at hand is the liability of Mr. McKesson as leader of Black Lives Matter, for inciting a criminal conduct that caused injury.

As shown in the NAACP v. Claiborne Hardware Co., NAACP v. Claiborne Hardware

---

[2] Ermert v. Hartford Ins. Co., 559 So. 2d 467, 473 (La. 1990).

Co., 458 U.S. 886, 927, 102 S. Ct. 3409, 3433, 73 L. Ed. 2d 1215, 1245, 1982 U.S. LEXIS 49, *75, 50 U.S.L.W. 5122 (U.S. 1982), Evers, the NAACP leader, of could be held liable for inciting violence.

> There are three separate theories that might justify holding Evers liable for the unlawful conduct of others. First, a finding that he authorized, directed, or ratified specific tortious activity would justify holding him responsible for the consequences of that activity. Second, a finding that his public speeches were likely to incite lawless action could justify holding him liable for unlawful conduct that in fact followed within a reasonable period. Third, the speeches might be taken as evidence that Evers gave other specific instructions to carry out violent acts or threats.

In this case, rock throwing at officers took place all day and well into the night when John Doe Officer was struck in the face with a rock. [Ex 9] Water bottles were thrown along with other items. [Ex 9] This went on all day and into the night and well before Mr. McKesson was arrested.

With regard to the vicarious liability of the NAACP for Mr. Evers (NAACP leader) actions, the Supreme Court found:[3]

> The associational rights of the NAACP and its members have been recognized repeatedly by this Court. The NAACP -- like any other organization -- of course HN18 may be held responsible for the acts of its agents throughout the country that are undertaken within the scope of their actual or apparent authority. Cf. American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp., 456 U.S. 556. Moreover, the NAACP may be found liable for other conduct of which it had knowledge and specifically ratified.

Here, it is significant that violence has been a part of preceding Black Lives Matter protests in other cities including burning and looting and rock throwing.  In this protest, Black Lives Matter, led by McKesson intentionally violated the law by blocking a public highway. [Ex 8]

## CONCLUSION

This Court should deny the motion to strike filed by Mr. DeRay McKesson. Service was proper.  Information publically available indicates that Black Lives Matter is a juridical

---

[3] NAACP v. Claiborne Hardware Co., 458 U.S. 886, 930, 102 S. Ct. 3409, 3434, 73 L. Ed. 2d 1215, 1247, 1982 U.S. LEXIS 49, *82, 50 U.S.L.W. 5122 (U.S. 1982)

entity. Under Louisiana law unincorporated associations may be sued and served. The motion to dismiss should be denied.

                Respectfully submitted:

                s/ Donna U. Grodner
                Donna U. Grodner (20840)
                GRODNER & ASSOCIATES
                2223 Quail Run, B-1
                Baton Rouge, Louisiana 70808
                (225) 769-1919 FAX (225) 769-1997
                Dgrodner@grodnerlaw.com

                Denise A. Vinet (17185)
                VINET & DAY, LLC
                11817 Bricksome Ave., Ste A
                Baton Rouge, Louisiana 70816
                (225) 292-7410 FAX (225) 292-4149

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2017, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to counsel for the defendants by operation of this Court's electronic filing system.

                s/ Donna U. Grodner
                Donna U. Grodner (20840)
                GRODNER & ASSOCIATES
                2223 Quail Run, B-1
                Baton Rouge, Louisiana 70808
                (225) 769-1919 FAX (225) 769-1997