UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| OFFICER JOHN DOE POLICE OFFICER, | * | CIVIL ACTION NO: |
| | * | 16-742-BAJ-RLB |
| | * | |
| VERSUS | * | JUDGE BRIAN A. JACKSON |
| | * | |
| DERAY MCKESSON and | * | MAGISTRATE JUDGE |
| BLACK LIVES MATTER | * | RICHARD L. BOURGEOIS, JR. |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## BLACK LIVES MATTER NETWORK, INC.'S
## MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

### INTRODUCTION

Plaintiff has improperly drawn Black Lives Matter Network, Inc. ("the Network")—an entity that is not named as a Defendant in the operative complaint—into this litigation by serving it with a summons issued to "Black Lives Matter." This attempt to put the Network on the hook for the alleged actions of others should be rejected under Rule 12(b)(5) of the Federal Rules of Civil Procedure.

Even if the complaint had named the Network as a defendant, any claims asserted against the Network would properly be dismissed because they are barred by Louisiana's anti-SLAPP statute. This lawsuit is a frontal assault on the First Amendment's protections of free speech and association. Via this lawsuit, Plaintiff seeks to silence protected speech on issues of public importance under the guise of preventing Defendants from "incit[ing]" violence. The claims against the Network, to the extent any are properly asserted, are plainly barred by Louisiana's anti-SLAPP statute and should be stricken.

Should Plaintiff's claims against the Network survive scrutiny under Rule 12(b)(5) and Louisiana's anti-SLAPP statute, they should nevertheless be dismissed pursuant to Rule 12(b)(2)

and 12(b)(6) because Plaintiff has failed to allege sufficient facts to support personal jurisdiction over or to state a claim against the Network.

For all of these reasons, and as described further below, this lawsuit should be dismissed.

## BACKGROUND

Plaintiff filed this lawsuit on November 7, 2016, against DeRay McKesson and Black Lives Matter, which is identified as a "national unincorporated association." Dkt. No. 1, Complaint ("Compl.") ¶ 3. On June 26, 2017, Plaintiff attempted to serve "Black Lives Matter" by serving Patrisse Cullors. Dkt. No. 58. Ms. Cullors is identified in the Complaint as one of the persons who "created" Black Lives Matter, Compl. ¶ 4, but she is not a named defendant and is not alleged to have had any involvement in the events at issue. On June 28, 2017, Plaintiff attempted to serve "Black Lives Matter" by serving Black Lives Matter Network, Inc. ("the Network") through its registered agent, Corporation Trust Company. Dkt. No. 62. On July 5, 2017, Plaintiff again attempted to serve "Black Lives Matter" by serving Alicia Garza, who is also identified in the Complaint as one of the persons who "created" Black Lives Matter but, like Ms. Cullors and the third founder identified in the complaint, Opal Tometi, is not herself a defendant or otherwise mentioned in the complaint. Dkt. No. 63.

The Network was incorporated to promote the social justice goals of a grassroots movement centered around the proposition that the lives of black people are given insufficient value by certain segments of our society, with unjust—and often deadly—results. *See* Declaration of Patrisse Cullors in Support of Black Lives Matter Network, Inc.'s Motion to Dismiss and Special Motion to Strike ("Cullors Decl.") ¶ 5. The Network describes itself as "an ideological and political intervention in a world where Black lives are systematically and intentionally targeted for demise. It is an affirmation of Black folks' contributions to this society, our humanity, and our resilience in the face of deadly oppression." *Id*. Ms. Cullors, Ms. Garza, and Ms. Tometi are

2

founding members of the Network, and Ms. Cullors is a Director of the Network. Cullors Decl. ¶ 2. DeRay McKesson, a named defendant in this lawsuit, is not affiliated in any way with the Network. *Id.* ¶ 3.

The Network is incorporated in Delaware. *Id.* ¶ 4. The Network does not have any chapters or offices in Louisiana. *Id.* The Network did not advertise, promote, or participate in the alleged July 9, 2016, protest in Baton Rouge, Louisiana. *Id.* ¶ 7. To Ms. Cullors' knowledge, no members of the Network even attended the alleged July 9, 2016 protest in Baton Rouge. *Id.* ¶ 8. In fact, following the July 7, 2016 shooting of police officers by a sniper in Dallas, Texas, the Network released a statement calling that shooting a tragedy and calling for an end to all violence. *Id.* ¶ 6.

## ARGUMENT

### I.    The Network Was Not Properly Served.

This case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5) because there was insufficient service of process. Rule 12(b)(5) is an appropriate vehicle to seek dismissal when "the wrong party—that is, a party not named in the summons—has been served." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1353 (3d ed.). Plaintiff has the burden of establishing that there was valid service of process. *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 436 (5th Cir. 1981) ("When service of process is challenged, the party on whose behalf it is made must bear the burden of establishing its validity."). Plaintiff cannot meet that burden here.

This suit was brought against Black Lives Matter, identified in the complaint as "a national unincorporated association"—an apparent reference by Plaintiff to the general grassroots "Black Lives Matter" movement rather than any actual legal entity. To cure this obvious failing in his pleading, Plaintiff served the summons issued to "Black Lives Matter" on the Network, a specific incorporated entity. *See* Dkt. No. 62. But the Network has not been named as a Defendant in this

lawsuit, and there is no allegation in the Complaint that the Network had any involvement in the events described therein. *See Wasson v. Riverside Cty.*, 237 F.R.D. 423, 424 n.2 (C.D. Cal. 2006) ("Merely serving a complaint on a nonparty does not make the nonparty a party."). In fact, the Network, which has no chapters, officers, or other physical presence in Louisiana, did not promote, publicize, or otherwise participate in the July 9, 2016 protest described in the Complaint. Cullors Decl. ¶¶ 4, 7. To Ms. Cullors' knowledge, no member of the Network even attended the alleged July 9, 2016 protest. *Id.* ¶ 8.

Under these circumstances, other courts have found that there was insufficient service of process. In *Wasson*, the district court granted a nonparty school district's motion to quash service pursuant to Rule 12(b)(4) and Rule 12(b)(5). 237 F.R.D. at 424-25. As in this case, the plaintiffs in *Wasson* "merely mailed to [the nonparty] a copy of the complaint, which [did] not name [the nonparty] as a defendant in either the caption or the body." *Id.* at 424; *see also Torrelio v. Evergreen Shipping Agency (Am.) Corp.*, No. 2:10–0857–MBS, 2011 WL 675043 at *2 (D.S.C. Feb. 16, 2011) (dismissing defendant who was not responsible for the disputed delivery of goods, but that had the same name as the carrier actually involved, and noting that "treat[ing] every entity with the word 'Evergreen' in its name as the same party" did not suffice where it was clear that the defendant was not responsible for the conduct at issue).

## II.  Plaintiff's Claims Are Barred By Louisiana's Anti-SLAPP Statute And Should Be Stricken.

Even if the Court finds that the Network has been properly served in this case, Louisiana's anti-SLAPP statute bars Plaintiff's claims.

Federal courts sitting in diversity apply the substantive law of the forum state—here, Louisiana—to the action. *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 168-69 (5th Cir.

2009). This includes Louisiana's anti-SLAPP statute, Code of Civil Procedure Article 971 ("Article 971"), even though that law is "nominally-procedural." *Id.*

Article 971 provides, in relevant part:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

The purpose of Article 971 is to "screen meritless claims pursued to chill one's constitutional rights under the First Amendment of the United States Constitution to freedom of speech and press." *Lee v. Pennington*, 830 So. 2d 1037, 1041 (La. App. 2002); *see also Lamz v. Wells*, 938 So. 2d 792, 796 (La. App. 2006) (granting special motion to strike and observing that "[t]he intent of Article 971 is to encourage continued participation in matters of public significance and to prevent this participation from being chilled through an abuse of judicial process").

To prevail on a motion brought under Article 971, the movant must first "make a prima facie showing that the matter arises from an act in furtherance of his or her right of free speech or the right of petition and in relation to a public issue." *Henry*, 566 F.3d at 181. Once this showing is made, the burden then shifts to the plaintiff to demonstrate a probability of success on his claims. *Id.* Such demonstration "requires more than that which is necessary to survive a normal motion to dismiss," and the "plaintiff must produce evidence of sufficient quality and quantity to demonstrate that he will be able to meet his burden of proof at trial." *Id.* Because of the critical importance of protecting free speech, defeating an anti-SLAPP motion has been described as "difficult." *Armington v. Fink*, No. 09–6785, 2010 WL 743524, at *4 (E.D. La. Feb. 24, 2010).

A.    **Plaintiff's Claims Arise From Defendants' Exercise Of Their Freedom Of Speech And Association In Relation To A Public Issue.**

There can be no serious question that the conduct of "Black Lives Matter" alleged in the complaint, if attributed to the Network, would "arise[] from an act in furtherance of [the] right of free speech [and] the right of petition and in relation to a public issue." *Henry*, 566 F.3d at 181. Although the actual allegations of *fact* offered in the complaint are remarkably spare—most of Plaintiff's allegations are wholly conclusory—the events at issue relate directly to what the Complaint itself describes as a political "protest" or "demonstration" in a "public highway" in Baton Rouge that was "staged and organized . . . on behalf of Black Lives Matter." *See, e.g.*, Complaint ¶¶ 3, 12. The freedom to protest and demonstrate in public spaces is undisputedly encompassed within the constitutional protections of freedom of speech and association. *See, e.g.*, *United States v. Grace*, 461 U.S. 171, 180 (1983) (noting that public sidewalks and other "[t]raditional public forum property occup[y] a special position in terms of First Amendment protection"); *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996) ("Activities such as demonstrations, protest marches, and picketing are clearly protected by the First Amendment."); *Davis v. Francois*, 395 F.2d 730, 733 (5th Cir. 1968) (recognizing First Amendment protections for "demonstrations or assemblies").

Because the Network has made a prima facie showing that Plaintiff's claims arise from an act in furtherance of the freedom of speech and petition, the burden now shifts to Plaintiff to show that he will likely succeed on the merits of those claims.

B.    **Plaintiff Cannot Meet His Burden To Establish A Probability Of Success Of His Claims.**

Plaintiff will not prevail on his claims because they are barred by Supreme Court precedent. Under *NAACP v. Claiborne Hardware Co.*, a civil rights organization—such as the Network— may only be "held responsible for the acts of its agents throughout the country that are undertaken

within the scope of their actual or apparent authority." 458 U.S. 886, 930 (1982). Imposing

liability without any showing that the organization "authorized—either actually or apparently—or

ratified unlawful conduct would impermissibly burden the rights of political association that are

protected by the First Amendment." *Id.* at 931. "For liability to be imposed by reason of

association alone, it is necessary to establish that the group itself possessed unlawful goals and that

the individual held a specific intent to further those illegal aims." *Id.* at 920. This is because "the

First Amendment restricts the ability of the State to impose liability on an individual solely because

of his association with another. . . . Civil liability may not be imposed merely because an individual

belonged to a group, some members of which committed acts of violence." *Id.* 919-20; *see also*

*Lam v. Ngo*, 91 Cal. App. 4th 832, 836-37 (2001) (applying *NAACP* and reversing trial court's

denial of defendant protest organizer's anti-SLAPP motion under California[1] law in relation to

claims arising from unauthorized violence by others).

Plaintiff does not allege any facts to demonstrate that the Network had anything whatsoever

to do with the act of violence on which his claim is based. Nor does he allege that the Network

advocates for "unlawful goals," authorized violence against police officers, or ratified unlawful

conduct. He does not allege these facts because he cannot. As described above, the Network did

not promote or participate in the alleged protest, let alone authorize acts of violence. Cullors Decl.

¶¶ 6-8. In fact, the Network affirmatively discourages its members from engaging in violence.

*See id.* ¶ 6.

None of these conclusions would change if the allegations attributed in the Complaint to

the alleged unincorporated association of "Black Lives Matter" were attributed to the Network.

---

[1] Louisiana state courts "have noted previously that the Louisiana and California anti-SLAPP statutes are virtually identical." *Yount v. Handshoe*, 171 So. 3d 381, 387 n.4 (La. App. 2015).

The Complaint alleges that "members" of Black Lives Matter participated in the protest, but that alone is not enough to satisfy the Supreme Court's test.  Nor is the gap filled by the conclusory allegation that the protestor who allegedly assaulted Plaintiff was "under the control and custody of the Defendants."  Compl. ¶ 20.  As discussed below, such conclusory allegations, which are unsupported by any actual allegations of *fact*, are insufficient to satisfy even the lesser standard for pleading applied under Rule 12(b)(6); they fall far short of satisfying the enhanced standard of Article 971.  Accordingly, all of Plaintiff's claims against the Network should be stricken.

> **C.     The Network Is Entitled To Attorney Fees And Costs.**

Article 971 provides that "a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs."  La. Code Civ. Proc. art. 971(B).  This provision applies in federal court.  *See Henry*, 566 F.3d at 183.  Should the Network prevail on its special motion to strike here, this Court should award it attorney fees and costs.

**III.    Plaintiff Has Not Alleged Any Facts to Support this Court's Personal Jurisdiction over the Network.**

Should this Court find that the Network has been properly served, Plaintiff's claims against the Network should still be dismissed because Plaintiff has failed to establish that this Court has personal jurisdiction over the Network, which is not a resident of this forum.  This Court should therefore dismiss the action as to the Network pursuant to Federal Rule of Civil Procedure 12(b)(2).

Plaintiff has the burden of establishing a prima facie case that this court has jurisdiction over the Network.  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  Because all of Plaintiff's claims are state-law claims,  this Court may only exercise personal jurisdiction over the Network if a Louisiana state court could do so.  *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 652 (5th Cir. 2002).  A Louisiana state court, in turn, may exercise personal jurisdiction over a nonresident defendant only if doing so would be permissible under the

state's long-arm statute and consistent with federal due process limits. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). "[B]ecause Louisiana's long arm statute is coextensive with the limits of due process, 'the sole inquiry into jurisdiction over a nonresident [under Louisiana law] is a one-step analysis of the constitutional due process requirements.'" *Patin*, 294 F.3d at 652 (citation omitted).

Personal jurisdiction over a nonresident defendant violates due process "unless the defendant has meaningful 'contacts, ties, or relations' with the forum state." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 483-84 (5th Cir. 2008) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Only after the plaintiff has established a defendant's minimum contacts with the forum does the burden shift to the defendant, who can still defeat personal jurisdiction by showing that "the exercise of jurisdiction would not comply with fair play and substantial justice." *Gines v. D.R. Horton, Inc.*, 867 F. Supp. 2d 824, 830 (M.D. La. 2012) (citation omitted).

Depending on the level of minimum contacts a nonresident defendant has with the forum state, a court may exercise one of two types of personal jurisdiction. General jurisdiction is permissible only where a defendant's contacts with the forum are "continuous and systematic." *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (citations omitted). Specific jurisdiction, "in which the suit arises out of or is related to the defendants' contacts with the forum," is only permissible when the defendant has directed conduct toward the forum state to "purposefully avail[] itself of the privilege of conducting activities within the forum State." *Id.* at 336-37 (citing *Hanson v. Denckla*, 357 U.S. 234, 253 (1958)). A court cannot exercise personal jurisdiction over a defendant who only has "random, fortuitous, or attenuated contacts" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted).

Here, the Complaint provides no allegations to support either general or specific personal jurisdiction against the Network.  Plaintiff alleges no facts whatsoever about the Network, let alone any facts about any conduct of the Network in Louisiana.  Nor could he.  The Network has no offices or other general presence in Louisiana.  Cullors Dec. ¶ 4.  Nor did it promote, advertise, or participate in the alleged July 2016 protest.  *Id.* ¶ 7.  Ms. Cullors, a Director of the Network, knows of no member of the Network who was present during the protest.  *Id.* ¶ 8.  And DeRay McKesson, a named defendant in this lawsuit who Plaintiff alleges was present at the alleged protest, is not affiliated with the Network.  *Id.* ¶ 3.

Because Plaintiff cannot set forth even a prima facie case to support either specific or general jurisdiction over the Network, the Court should dismiss all claims against the Network.

## IV.    The Complaint Fails To State A Claim Against The Network Upon Which Relief May Be Granted.

In addition to and separate from his failure to sufficiently allege personal jurisdiction over the Network, Plaintiff has failed to allege facts sufficient to plausibly state a claim against it.  For this reason, Plaintiff's claims against the Network should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The allegations must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).

10

A complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts must not "strain to find inferences favorable to [the plaintiff], and [must] not accept conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).

At the threshold, the Complaint plainly fails to state a claim against the Network because it contains no allegations whatsoever concerning the Network. *See* Compl. ¶ 3 (naming "Black Lives Matter," a "national unincorporated association," as a defendant). Even if the allegations in the Complaint relating to "Black Lives Matter" were attributed to the Network, they would still be insufficient to state a claim for either negligence or respondeat superior.

***First***, a plaintiff must allege "specific claims of wrongdoing on the part of" a defendant in order to state a claim against that defendant. *Chyba v. EMG Mortg. Corp.*, 450 F. App'x 404, 405 (5th Cir. 2011) (affirming district court's grant of Rule 12(b)(6) motion to dismiss). Any argument by Plaintiff that his allegations of conduct by "Defendants" are sufficient to support a claim against the Network would be meritless. The presence of multiple defendants does not excuse Plaintiff from his obligation to allege conduct specific to each individual defendant in order to state a claim against that defendant. *See Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) ("When the plaintiff's complaint uses blanket terms covering all the defendants, by lumping them together . . . , these allegations are properly disregarded[.]"); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of . . . the collective term 'Defendants' . . . , it is impossible for any of these individuals to ascertain what particular . . . acts they are alleged to have committed."); *Alexander v. U.S. Bank, N.A.*, No. 3:07-CV-1239-L, 2007 WL 4302473, at *2 (N.D. Tex. Dec. 10, 2007) (granting Rule 12(b)(6) motion to dismiss because the complaint did not

"include a single allegation as to any act performed by" any of the moving defendants and did not "set out any facts linking [the moving defendants] to the other Defendants for whom Plaintiff has plead specific acts," even though the plaintiff alleged that "all the Defendants are working together" to carry out illegal activity).

**Second**, Plaintiff has failed to allege critical elements of his negligence claim. Louisiana courts employ a "duty-risk" analysis when assessing claims of negligent conduct, requiring proof of five elements: (1) "the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element)." *Horton v. Blackrock Aggregates, LLC,* 213 So. 3d 429, 435-36 (La. App. 2017). The determination of whether a defendant had a duty to act in a certain way is a "policy decision," requiring courts to "make a policy decision in light of the unique facts and circumstances presented. The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Id.* at 441.

Plaintiff does not allege any duty on the part of the Network to protect police from acts of violence by protesters. Plaintiff only makes the conclusory allegation that "DEFENDANTS knew or should have known that the physical contact and riot and demonstration that they staged would become violent as other similar riots had become violent and thus DEFENDANTS knew or should have know[n] that . . . their actions could cause and/or lead to serious personal injury." Compl. ¶ 28. Aside from being vague and conclusory, these allegations are insufficient to state a claim for

negligence because they do not allege that the Network had any *duty* to protect Plaintiff from violence by individual protesters, let alone how, if at all, the Network breached any such duty.

**Third**, the Complaint lacks allegations demonstrating that the Network may be liable for the alleged violent conduct of the unidentified assailant.  Plaintiff appears to seek to hold the Network responsible for the actions of "the BLACK LIVES MATTER membership," which ostensibly includes the unnamed protestor who allegedly threw the rock that injured Plaintiff, via the doctrine of respondeat superior.  Compl. ¶ 30.  But, as described above, a civil rights organization may not be held liable for unauthorized acts of violence by protesters.  *See supra* at 6-8; *NAACP*, 458 U.S. at 930.  Plaintiff does not allege that the Network authorized or ratified the alleged violent acts and therefore cannot state a claim under *NAACP*.

Moreover, in Louisiana, respondeat superior liability arises only in the employment context.  *See Roberts v. Benoit*, 605 So. 2d 1032, 1037, 1044-45 (La. 1991).  Under the doctrine, respondeat superior liability is "cabined to the narrow confines imposed by the . . . 'scope of employment' limitation."  *Id.* at 1037.  Here, Plaintiff does not allege any facts linking the unidentified assailant to the Network—let alone any facts supporting an employer-employee relationship, or that the throwing of the rock was within the "course and scope of employment."  Rather, Plaintiff only makes the conclusory allegation that the person who threw the rock was a "member" of "Defendant BLACK LIVES MATTER, under the control and custody of the DEFENDANTS."  Compl. ¶ 20.  No *facts* are alleged to establish that this person actually was under the "control and custody" of any particular entity, much less that he was in the specific kind of relationship giving rise to potential respondeat superior liability.  Plaintiff's allegations are therefore insufficient to state a claim for respondeat superior liability against the Network.  *See R2*

**BROKEN UP — see below**

*Invs. LDC*, 401 F.3d at 642 (directing district courts to not consider "conclusory allegations, unwarranted deductions, or legal conclusions" when resolving a motion to dismiss).

Because Plaintiff has failed to plead any facts from which the Court may conclude that the Network is "liable for the misconduct alleged," the claims against it must be dismissed. *Iqbal*, 556 U.S. at 678.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims against Black Lives Matter Network, Inc., should be stricken or dismissed, and attorney fees and costs should be awarded to the Network.

Respectfully submitted, this 7th day of August, 2017.

*/s/ Christine M. Calogero*
Christine M. Calogero, 36818
BARRASSO USDIN KUPPERMAN
    FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24TH Floor
New Orleans, Louisiana  70112
Telephone:    (504) 589-9700
Facsimile:    (504) 589-9701
ccalogero@barrassousdin.com
*Attorney for Black Lives Matter Network, Inc.*

**<u>CERTIFICATE</u>**

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record via the Court's CM/ECF system, this 7th day of August, 2017.

*/s/ Christine M. Calogero*