UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**OFFICER JOHN DOE**                                  CIVIL ACTION

**VERSUS**

**DERAY MCKESSON ET AL.**                        NO.: 16-00742-BAJ-RLB

RULING AND ORDER

Before the Court is the **Motion for Leave of Court to Proceed as John Doe (Doc. 2)** filed by Plaintiff. Plaintiff – a police officer who allegedly was injured during a demonstration that took place in connection with the death of Alton Sterling in July 2016 – wishes to proceed under the fictitious name of "John Doe," thereby seeking from the Court a waiver of the pleading requirements prescribed by Federal Rule of Civil Procedure 10(a). Defendant DeRay Mckesson filed a memorandum in opposition to the Motion, (*see* Doc. 16), and Plaintiff filed a reply memorandum in support of the Motion, (*see* Doc. 23-2). The Court held oral argument on the Motion. For the reasons explained herein, Plaintiff's **Motion for Leave of Court to Proceed as John Doe (Doc. 2)** is **DENIED**.

"Generally, parties to a lawsuit must identify themselves in their respective pleadings." *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992) (per curiam) (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979)). Rule 10(a) requires litigants to "name all the parties" in every pleading, Fed. R. Civ. P. 10(a); this requirement "protects the public's legitimate

1

interest in knowing all of the facts involved, including the identities of the parties,'" *Frank*, 951 F.2d at 322. "It is the exceptional case in which a plaintiff may proceed under a fictitious name." *Frank*, 951 F.2d at 323.

"The ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right [that] outweighs the 'customary and constitutionally[ ]embedded presumption of openness in judicial proceedings.'" *Id.* (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. Unit A Aug. 1981)). The United States Court of Appeals for the Fifth Circuit has outlined three "factors common to anonymous[-]party suits [that] deserve considerable weight" when evaluating a plaintiff's motion to proceed under a fictitious name: (1) whether the plaintiff is "challeng[ing] governmental activity"; (2) whether the plaintiff will be required "to disclose information 'of the utmost intimacy'"; and (3) whether the plaintiff will be "compelled to admit their intention to engage in illegal conduct, thereby risking criminal prosecution." *Stegall*, 653 F.2d at 185. The Fifth Circuit nonetheless has cautioned that its recognition of these three factors should not be interpreted as the establishment of a "rigid, three-step test for the propriety of party anonymity," and the Fifth Circuit has instructed courts to engage in a "fact-sensitive" analysis. *Id.*

None of the factors outlined by the Fifth Circuit in *Doe v. Stegall*, 653 F.2d 180 (5th Cir. Unit A Aug. 1981), are applicable to the facts of this case. Plaintiff is not challenging governmental activity; indeed, the fact that Plaintiff is bringing suit against private actors weighs *in favor* of requiring him to disclose his identity. *See Wynne & Jaffe*, 599 F.2d at 713 ("While . . . suits [challenging governmental activity]

involve no injury to the Government's 'reputation,' the mere filing of a civil action against other private parties may cause damage to their good names and reputation and may also result in economic harm."). Nor does this case involve "matters of a sensitive and highly personal nature" – such as one's use of birth control, seeking an abortion, or homosexuality – that have warranted anonymity in previous cases. *See id.* (citing *Poe v. Ullman*, 367 U.S. 497 (1961); *Roe v. Wade*, 410 U.S. 113 (1973); *Doe v. Dep't of Transp., FAA*, 412 F.2d 674 (8th Cir. 1969)). Further, Plaintiff has not alleged that he intends to engage in illegal conduct.

Rather, Plaintiff alleges that if his identity were revealed, he "could [be] subject[ed] . . . to additional violence or injury" due to his "public job that requires him to [be] in the public." (Doc. 2 at ¶ 8). In support of this contention, Plaintiff lists various incidents in which police officers have been injured – sometimes fatally – by individuals who Plaintiff alleges may have some connection with the "Black Lives Matter" movement. (*See id.* at ¶¶ 1-7). Plaintiff cites (1) an incident that occurred "along a Tennessee highway," in which a person allegedly fired at passing cars while yelling disparaging remarks about law enforcement and the phrase "[b]lack lives matter," (*id.* at ¶ 1); (2) an incident that occurred in Dallas, Texas, in which "12 police officers . . . were shot" during a demonstration that Plaintiff alleges was associated with the "Black Lives Matter" movement, (*id.* at ¶ 3); (3) an incident that occurred in Portland, Oregon, in which a "Black Lives Matter leader [allegedly] called for attacks on police at a rally," (*id.* at ¶ 6); and (4) an incident that occurred in Baton Rouge, Louisiana, in which an individual – who Plaintiff states "has *not* been shown to be a

3

member of Black Lives Matter" – allegedly "ambushed several Baton Rouge [p]olice office[r]s with a semi-automatic rifle," (*id.* at ¶ 7 (emphasis added)).

The Fifth Circuit has held that "[t]he threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity." *Stegall*, 653 F.2d at 186. In *Stegall*, however, the Fifth Circuit held that "the threats of violence generated by th[e] case" – taken together with the fact that the plaintiffs in the case were challenging governmental activity and that their claims related to their beliefs about religion, which the court remarked is "perhaps the quintessentially private matter" – "tip[ped] the balance against the customary practice of judicial openness." *Id.* The plaintiffs in *Stegall* "offered several documentary exhibits to bolster their assertions that they might be subjected to retaliatory harassment or violence if their identities were publicly revealed," including statements made by community members at a school board meeting that compared the plaintiffs to "Satan" and foretold that "God [was] fixing to come back" and "show them" as a result of their bringing suit. *Id.* at 182 n.6.

In contrast, Plaintiff conceded at oral argument that he has received *no* particularized threats of violence since filing this action. His allegation that he may be subjected to violence is based solely on actions taken by third parties who have no relation to Plaintiff's initiation of this lawsuit. The violence committed against police officers that Plaintiff cites in support of the Motion, although allegedly targeted toward police officers, was committed in a random manner: not one of the officers was singled out for a violent attack because of any statements that he or she made or

4

any lawsuits that he or she filed. These examples, therefore, merely illustrate that Plaintiff – by virtue of his occupation as a police officer – *always* faces the threat of violence. These examples do not, however, demonstrate that the threat of violence against Plaintiff *in particular* is likely to increase *as a result* of his filing this lawsuit. *See id.* at 186 (holding that the "threats of violence *generated by th[e] case*," along with other factors, weighed in favor of the plaintiffs proceeding anonymously (emphasis added)).

Plaintiff has not shown that he uniquely will face an increased threat of violence – above the generalized threat of violence that all police officers face – as a result of filing this lawsuit, and none of the factors that the Fifth Circuit has recognized as weighing in favor of anonymity are relevant to the facts of this case. Therefore, Plaintiff has not demonstrated a privacy interest that outweighs the "customary and constitutionally[ ]embedded presumption of openness in judicial proceedings." *Id.*

Accordingly,

**IT IS ORDERED** that the **Motion for Leave of Court to Proceed as John Doe (Doc. 2)** filed by Plaintiff is **DENIED**.

Baton Rouge, Louisiana, this 28th day of September, 2017.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA