UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

OFFICER JOHN DOE                              CIVIL ACTION

VERSUS

DERAY MCKESSON ET AL.                  NO.: 16-00742-BAJ-RLB

<u>RULING AND ORDER</u>

Before the Court are **Defendant DeRay Mckesson's Motion to Dismiss
(Doc. 15)** ("Defendant's Rule 12 Motion"), **Defendant DeRay Mckesson's Motion
to Dismiss Pursuant to Federal Rule of Civil Procedure 9(a) (Doc. 43)**
("Defendant's Rule 9 Motion"), and Plaintiff's **Motion to File Amended Complaint
for Damages (Doc. 52)** ("Plaintiff's Motion to Amend").    Plaintiff filed a
memorandum in opposition to Defendant's Rule 12 Motion, (*see* Doc. 21), Defendant
DeRay Mckesson filed a reply memorandum in support of the Motion, (*see* Doc. 29),
and Plaintiff filed a surreply in opposition to the Motion, (*see* Doc. 38).   Plaintiff also
filed a memorandum in opposition to Defendant's Rule 9 Motion.  (*See* Doc. 44).   The
Court held oral argument on Defendant's Rule 12 and Rule 9 Motions.

"[T]he practice of persons sharing common views banding together to achieve
a common end is deeply embedded in the American political process." *Citizens
Against Rent Control/Coal. for Fair Hous. v. City of Berkeley*, 454 U.S. 290, 294
(1981).   Because of its nature as a fundamental guarantee under the First
Amendment to the United States Constitution, "[t]he right to associate does not lose
all constitutional protection merely because some members of [a] group may have

1

participated in conduct," such as violence, "that itself is not protected." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 908 (1982). Thus, when a tort is committed in the context of activity that is otherwise protected by the First Amendment, courts must use "precision" in determining who may be held liable for the tortious conduct so that the guarantees of the First Amendment are not undermined. *Id.* at 916 (quoting *NAACP v. Button*, 371 U.S. 415, 438 (1963)).

Plaintiff's alleged injuries in this case – which he claims to have suffered in the line of duty as a police officer while responding to a demonstration – are not to be minimized. Plaintiff has failed, however, to state a plausible claim for relief against an individual or entity that both has the capacity to be sued and falls within the precisely tailored category of persons that may be held liable for his injuries, which he allegedly suffered during activity that was otherwise constitutionally protected. For the reasons explained herein, **Defendant DeRay Mckesson's Motion to Dismiss (Doc. 15)** and **Defendant DeRay Mckesson's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 9(a) (Doc. 43)** are **GRANTED**, Plaintiff's **Motion to File Amended Complaint for Damages (Doc. 52)** is **DENIED**, and this matter is **DISMISSED WITH PREJUDICE**.

## I.    BACKGROUND

In his Complaint, Plaintiff – a Baton Rouge Police Department officer – alleges that he responded to a demonstration that took place on July 9, 2016, at the intersection of Airline Highway and Goodwood Boulevard.  (*See* Doc. 1 at ¶¶ 12, 15-16).  Plaintiff avers that Defendant DeRay Mckesson ("Mckesson") "le[]d the protest," "acting on behalf of" Defendant "Black Lives Matter."  (*Id.* at ¶ 3).  Plaintiff asserts that "Black Lives Matter" is a "national unincorporated association," of which Mckesson is a "leader and co-founder."  (*Id.*).

Although Plaintiff alleges that Mckesson and "Black Lives Matter" "were in Baton Rouge for the purpose of demonstrating, protesting[,] and rioting to incite others to violence against police and other law enforcement officers," (*id.* at ¶ 11), Plaintiff concedes that the demonstration "was peaceful" when it commenced, (*id.* at ¶ 17).  Plaintiff avers that "the protest turned into a riot," (*id.* at ¶ 18), however, when "activist[s] began pumping up the crowd," (*id.* at ¶ 17).  Thereafter, demonstrators allegedly "began to loot a Circle K," taking "water bottles" from the business and "hurl[ing]" them at the police officers who were positioned at the demonstration.  (*Id.* at ¶ 18).  Once the demonstrators had exhausted their supply of water bottles, Plaintiff asserts that an unidentified demonstrator "picked up a piece of concrete or [a] similar rock[-]like substance and hurled [it] into the police."  (*Id.* at ¶ 20).  Plaintiff allegedly was struck by this object, causing several serious injuries.  (*Id.* at ¶ 21).

Plaintiff alleges that Mckesson "was in charge of the protests" and "was seen and heard giving orders throughout the day and night of the protests."  (*Id.* at ¶ 17).

Mckesson, according to Plaintiff, "was present during the protest and . . . did nothing to calm the crowd"; instead, Mckesson allegedly "incited the violence on behalf of . . . Black Lives Matter." (*Id.* at ¶ 19).

Plaintiff brought suit, naming Mckesson and "Black Lives Matter" as Defendants.  In his Complaint, Plaintiff states claims in negligence and respondeat superior, asserting that Mckesson and "Black Lives Matter" "knew or should have known that the physical contact[,] riot[,] and demonstration that they staged would become violent . . . and . . . that violence would result." (*Id.* at ¶ 28).  The unidentified demonstrator who threw the object that allegedly struck Plaintiff, he avers, was "a member of . . . Black Lives Matter" and was "under the control and custody" of Mckesson and "Black Lives Matter." (*Id.* at ¶ 20).  Therefore, according to Plaintiff, Mckesson and "Black Lives Matter" "are liable in solido for the injuries caused to" Plaintiff by the unidentified demonstrator. (*Id.* at ¶ 31).

Mckesson thereafter filed Defendant's Rule 12 Motion, asserting that Plaintiff failed to state a plausible claim for relief against him, as well as Defendant's Rule 9 Motion, asserting that "Black Lives Matter" is not an entity that has the capacity to be sued.  Plaintiff responded by filing Plaintiff's Motion to Amend, seeking leave of court to amend his complaint to add "#BlackLivesMatter" and Black Lives Matter Network, Inc., as Defendants and to supplement his Complaint with additional factual allegations.

## II.     DISCUSSION

The Court finds that Plaintiff's Complaint suffers from numerous deficiencies; namely, the Complaint fails to state a plausible claim for relief against Mckesson and it names as a Defendant a social movement that lacks the capacity to be sued.  In an attempt to ameliorate these deficiencies, Plaintiff has sought leave of court to amend his Complaint to name two additional Defendants – "#BlackLivesMatter" and Black Lives Matter Network, Inc. – and to plead additional factual allegations.  Plaintiff's proposed amendment, however, would be futile:   Plaintiff fails to remedy the deficiencies contained in his initial Complaint with respect to his claims against Mckesson and "Black Lives Matter," "#BlackLivesMatter" – a *hashtag* – lacks the capacity to be sued, and Plaintiff fails to state a plausible claim for relief against Black Lives Matter Network, Inc.  Plaintiff's claims, therefore, must be dismissed, and Plaintiff must be denied the opportunity to amend his Complaint.

### A.     Defendant's Rule 12 Motion

Setting aside his conclusory allegations, Plaintiff has pleaded facts that merely demonstrate that Mckesson exercised his constitutional right to association and that he solely engaged in protected speech at the demonstration that took place in Baton Rouge on July 9, 2016.  Because Plaintiff has failed to plead sufficient, nonconclusory factual allegations that would tend to demonstrate that Mckesson exceeded the bounds of protected speech, Mckesson cannot be held liable for the conduct of others with whom he associated, and Plaintiff thus has failed to state a plausible claim for relief against Mckesson.

### 1.   *Legal Standard*

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Thus, a complaint need not set out "detailed factual allegations," but a complaint must contain something more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and therefore "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice" to survive a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

### 2. *Analysis*

"The First Amendment does not protect violence." *Claiborne Hardware*, 458 U.S. at 916 ("Certainly violence has no sanctuary in the First Amendment, and the use of weapons . . . may not constitutionally masquerade under the guise of 'advocacy.'" (quoting *Samuels v. Mackell*, 401 U.S. 66, 75 (1971) (Douglas, J., concurring))). "[T]he presence of activity protected by the First Amendment," however, "imposes restraints on the grounds that may give rise to damages liability and on the persons who may be held accountable for those damages." *Id.* at 916-17. Thus, while a person may be held liable in tort "for the consequences of [his] violent conduct," a person cannot be held liable in tort "for the consequences of nonviolent, protected activity." *Id.* at 918. "Only those losses proximately caused by unlawful conduct may be recovered." *Id.*

"The First Amendment similarly restricts the ability" of a tort plaintiff to recover damages from "an individual solely because of his association with another." *Id.* at 918-19. "Civil liability may not be imposed merely because an individual belonged to a group, some members of which committed acts of violence." *Id.* at 920. "For liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims." *Id.* To impose tort liability on an individual for the torts of others with whom he associated, a plaintiff must prove that (1) the

7

individual "authorized, directed, or ratified specific tortious activity"; (2) his public speech was "likely to incite lawless action" and the tort "followed within a reasonable period"; or (3) his public speech was of such a character that it could serve as "evidence that [he] gave other specific instructions to carry out violent acts or threats." *Id.* at 927.

In his Complaint, Plaintiff alleges that Mckesson "le[]d the protest and violence that accompanied the protest." (*Id.* at ¶ 3). As support for this contention, Plaintiff pleaded that Mckesson "was in charge of the protests[,] and he was seen and heard giving orders throughout the day and night of the protests." (*Id.* at ¶ 17). Further, Plaintiff avers that Mckesson "did nothing to calm the crowd" during the demonstration; rather, Mckesson "incited the violence." (*Id.* at ¶ 19).

All of these allegations are conclusory in nature, however, and they do not give rise to a plausible claim for relief against Mckesson. In order to state a claim against Mckesson to hold him liable for the tortious act of another with whom he was associating during the demonstration, Plaintiff would have to allege facts that tend to demonstrate that Mckesson "authorized, directed, or ratified specific tortious activity." *Id.* Plaintiff, however, merely states – in a conclusory fashion – that Mckesson "incited the violence" and "g[ave] orders," (*id.* at ¶¶ 17, 19), but Plaintiff does not state in his Complaint *how* Mckesson allegedly incited violence or *what* orders he allegedly was giving. Therefore, the Complaint contains a "[t]hreadbare recital[] of the elements" of a cause of action against Mckesson, which Plaintiff only has "supported [with] mere conclusory statements,"  and therefore Plaintiff's

Complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Further, Plaintiff has not pleaded sufficient factual allegations regarding Mckesson's public speech to state a cause of action against Mckesson based on that speech.   The only public speech to which Plaintiff cites in his Complaint is a one-sentence statement that Mckesson allegedly made to *The New York Times*:   "The police want protestors to be too afraid to protest." (*Id.* at ¶ 24).  Mckesson's statement does not advocate – or make *any* reference to – violence of any kind, and even if the statement *did*, "mere *advocacy* of the use of force or violence does not remove speech from the protection of the First Amendment." *Claiborne Hardware*, 458 U.S. at 927. This statement falls *far* short of being "likely to incite lawless action," which Plaintiff would have to prove to hold Mckesson liable based on his public speech. *Id.*

Nor can Plaintiff premise Mckesson's liability on the theory that he allegedly "did nothing to calm the crowd." (*Id.* at ¶ 19).  As the United States Supreme Court stated in *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), "[c]ivil liability may not be imposed merely because an individual belonged to a group, some members of which committed acts of violence," *id.* at 920.

Plaintiff therefore has failed to plead in his Complaint "factual content that allows the court to draw the reasonable inference that [Mckesson] is liable for the misconduct alleged," and thus Plaintiff's claims against Mckesson must be dismissed. *Iqbal*, 556 U.S. at 678.

### B.    Defendant's Rule 9 Motion

The Court finds that "Black Lives Matter," as Plaintiff uses that term in his Complaint, refers to a *social movement*.  Although many entities have utilized the phrase "black lives matter" in their titles or business designations, "Black Lives Matter" itself is not an *entity* of any sort.  Therefore, all claims against "Black Lives Matter" must be dismissed because social movements lack the capacity to be sued.

### 1.    *Legal Standard*

Although a motion to dismiss for lack of capacity is not contemplated by the express provisions of Rule 12, such a motion is treated by courts as a motion to dismiss pursuant to Rule 12(b)(6) when the issue can be resolved by analyzing the face of the complaint.  *See Klebanow v. N.Y. Produce Exch.*, 344 F.2d 294, 296 n.1 (2d Cir. 1965) ("Although the defense of lack of capacity is not expressly mentioned in [R]ule 12(b), the practice has grown up of examining it by a 12(b)(6) motion when the defect appears upon the face of the complaint."); *Oden Metro Turfing, Inc. v. Cont'l Cas. Co.*, No. 12-cv-01547, 2012 WL 5423704, at *2 (W.D. La. Oct. 10, 2012) (citing *Klebanow*, 344 F.2d 294); *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1294 (2017 Supp. 2017) ("[I]f the lack of capacity . . . appears on the face of the pleadings or is discernible there from, the issue can be raised by a motion for failure to state a claim for relief.").  The Court may treat a motion to dismiss for lack of capacity as a motion to dismiss pursuant to Rule 12(b)(6) even if the motion is labelled incorrectly.  *See Oden Metro*, 2012 WL 5423704, at *2.

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos*, 599 F.3d at 461 (quoting *True*, 571 F.3d at 417). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint," however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. When analyzing a motion to dismiss for failure to state a claim, "courts may also consider matters of which they may take judicial notice." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).

If a party is not an individual or a corporation, the capacity of that party to be sued "is determined . . . by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). "Under Louisiana law, an entity must qualify as a 'juridical person' to possess the capacity to be sued." *Hall v. Louisiana*, 974 F. Supp. 2d 957, 962 (M.D. La. 2013). "A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership." La. Civ. Code art. 24. "[F]or an unincorporated association to possess juridical personality, the object of the contract of association must necessarily be the creation of an entity whose personality 'is distinct from that of its members.'" *Ermert v. Hartford Ins.*, 559 So. 2d 467, 474 (La. 1990) (quoting La. Civ. Code art. 24). "Unless such an intent exists, the parties do not create a fictitious person[,] but instead simply incur obligations among

themselves." *Id.* "Consequently, an unincorporated association, as a juridical person distinct from its members, does not come into existence or commence merely by virtue of the fortuitous creation of a community of interest or the fact that a number of individuals have simply acted together"; rather, "there must also be an agreement whereby two or more persons combine certain attributes to create a separate entity for a legitimate purpose." *Id.*

### 2.    *Analysis*

Mckesson, in his Rule 9 Motion, argues that the Court should dismiss "Black Lives Matter" as a Defendant in this case because it lacks the capacity to be sued. According to Defendant, "Black Lives Matter" "is a movement and not a juridical entity capable of being sued." (Doc. 43-1 at p. 2). The Court finds that the capacity of "Black Lives Matter" to be sued can be discerned from the face of the pleadings, and therefore it will treat Defendant's Rule 9 Motion as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Klebanow*, 344 F.2d at 296 n.1.

Federal Rule of Evidence 201 permits a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction." Fed. R. Evid. 201(b)(1). Courts previously have taken judicial notice of the character, nature, or composition of various social movements. *See, e.g.*, *United States v. Parise*, 159 F.3d 790, 801 (3d Cir. 1998) (holding that the court could "easily take judicial notice" of the aims and goals of the "union movement"); *Attorney Gen. of U.S. v. Irish N. Aid. Comm.*, 530 F. Supp. 241, 259 (S.D.N.Y. 1981) ("Under the doctrine of judicial notice, the Court can observe that the

'Republican movement' consists of groups other than, and in addition to, the IRA; but the Court can also notice that the IRA is a 'Republican movement' . . . ."); *see also Baggett v. Bullitt*, 377 U.S. 360, 376 n.13 (1964) (noting that "[t]he lower court took judicial notice of the fact that the Communist Party of the United States . . . was a part of the world Communist movement dominated by the Soviet Union").

In his Complaint, Plaintiff names "Black Lives Matter" as a Defendant, describing "Black Lives Matter" as a "national unincorporated association with chapter[s] in many states[,] which is amenable to service of process through a managing member."  (Doc. 1 at ¶ 3).  Plaintiff alleges that "Black Lives Matter" was "created by Alicia Garza, Patrisse Cullors, and Opal Tometi" and that the "leaders" of "Black Lives Matter" are "Rashad Turner, Johnetta Elzie[,] and DeRay Mckesson." (*Id.* at ¶ 4).

The Court judicially notices that "Black Lives Matter," as that term is used in the Complaint, is a *social movement* that was catalyzed on social media by the persons listed in the Complaint in response to the perceived mistreatment of African-American citizens by law enforcement officers.  Fed. R. Evid. 201; *cf. Parise*, 159 F.3d at 801 (holding that the court could "easily take judicial notice" of the aims and goals of the "union movement"); *Irish N. Aid. Comm.*, 530 F. Supp. at 259 ("Under the doctrine of judicial notice, the Court can observe that the 'Republican movement' consists of groups other than, and in addition to, the IRA; but the Court can also notice that the IRA is a 'Republican movement' . . . ."); *see also Baggett*, 377 U.S. at 376 n.13 (noting that "[t]he lower court took judicial notice of the fact that the

13

Communist Party of the United States . . . was a part of the world Communist movement dominated by the Soviet Union"). Because "Black Lives Matter," as that term is used in the Complaint, is a *social movement*, rather than an organization or entity of any sort, its advent on social media merely was a "fortuitous creation of a community of interest"; "Black Lives Matter" was not created through a "contract of association" and is not an "entity whose personality 'is distinct from that of its members,'" and therefore it is not a "juridical person" that is capable of being sued. *Ermert*, 559 So. 2d at 474 (quoting La. Civ. Code art. 24).

The Court notes that the phrase "black lives matter" has been utilized by various entities wishing to identify themselves with the "Black Lives Matter" movement. Plaintiff himself has identified one such entity and seeks leave of court to add that entity as a Defendant: Black Lives Matter Network, Inc. (*See* Doc. 52-4 at ¶ 3). These entities undoubtedly are "juridical persons" capable of being sued, and therefore the issue of such an entity's *capacity* would not impede Plaintiff from filing suit against it. "Black Lives Matter," as a social movement, *cannot* be sued, however, in a similar way that a person cannot plausibly sue other social movements such as the Civil Rights movement, the LGBT rights movement, or the Tea Party movement. If he could state a plausible claim for relief, a plaintiff *could* bring suit against entities *associated* with those movements, though, such as the National Association for the Advancement of Colored People, the Human Rights Campaign, or Tea Party Patriots, because those entities are "juridical persons" within the meaning of Louisiana law. *See* La. Civ. Code art 24.

Nevertheless, Plaintiff merely has identified "Black Lives Matter" as a Defendant in his Complaint, and that term connotes a *social movement* that is not a "juridical person" and that lacks the capacity to be sued. *See Ermert*, 559 So. 2d at 474. Therefore, "Black Lives Matter" shall be dismissed as a Defendant in this case because it lacks the capacity to be sued. *See id.*

### C.   Plaintiff's Motion to Amend

Following the filing of Defendant's Rule 12 Motion and Defendant's Rule 9 Motion, as well as the oral argument on those Motions, Plaintiff sought leave of court to amend his Complaint. Plaintiff identifies two additional Defendants in his Proposed Amended Complaint – "#BlackLivesMatter" and Black Lives Matter Network, Inc. – and pleads additional factual allegations. (*See* Doc. 52-4). In his Proposed Amended Complaint, however, Plaintiff nonetheless fails to state a plausible claim for relief against any of the four named Defendants: "Black Lives Matter" – a social movement – and "#BlackLivesMatter" – a hashtag – both lack the capacity to be sued, and Plaintiff has failed to state plausible claims for relief against either Mckesson or Black Lives Matter Network, Inc., that are supported by anything more than conclusory allegations. Therefore, because Plaintiff's Proposed Amended Complaint would be subject to dismissal in its entirety, the Court shall deny Plaintiff leave of court to amend his Complaint.

## 1. *Legal Standard*

If a party is not entitled to amend a pleading as a matter of course pursuant to Rule 15(a)(1), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "[A] district court may refuse leave to amend," however, "if the filing of the amended complaint would be futile." *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014). In other words, the Court may deny Plaintiff's Motion to Amend "if the complaint as amended would be subject to dismissal." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009).

## 2. *Analysis*

### a. "#BlackLivesMatter"

Plaintiff, in his Proposed Amended Complaint, seeks to add as a Defendant "#BlackLivesMatter." (*See id.* at ¶ 3). Plaintiff alleges that "#BlackLivesMatter" is a "national unincorporated association [that] is domiciled in California." (*Id.*).

The Court judicially notices that the combination of a "pound" or "number" sign (#) and a word or phrase is referred to as a "hashtag" and that hashtags are utilized on the social media website Twitter in order to classify or categorize a user's particular "tweet," although the use of hashtags has spread to other social media websites and throughout popular culture. *See* Fed. R. Evid. 201; *see also TWTB, Inc. v. Rampick*, 152 F. Supp. 3d 549, 563 n.97 (E.D. La. 2016) ("A hashtag is 'a word or phrase preceded by the symbol # that classifies or categorizes the accompanying text (such as a tweet).'" (quoting *Hashtag*, Merriam-Webster Dictionary (2017),

https://www.merriam-webster.com/dictionary/hashtag)).   The Court also judicially notices that "#BlackLivesMatter" is a popular hashtag that is frequently used on social media websites.  *See* Fed. R. Evid. 201.

Plaintiff therefore is attempting to sue a *hashtag* for damages in tort.  For reasons that should be obvious,[1] a hashtag – which is an *expression* that categorizes or classifies a person's thought – is not a "juridical person" and therefore lacks the capacity to be sued.  *See* La. Civ. Code art. 24.  Amending the Complaint to add "#BlackLivesMatter" as a Defendant in this matter would be futile because such claims "would be subject to dismissal"; a hashtag is patently incapable of being sued. *Ackerson*, 589 F.3d at 208.

b.     "Black Lives Matter"

Plaintiff also seeks to supplement his allegations regarding Defendant "Black Lives Matter."  In his Proposed Amended Complaint, Plaintiff avers that "Black Lives Matter" is a "chapter-based national unincorporated association" that is "organized" under the laws of the State of California, though it allegedly is also a "partnership" that is a "citizen" of "California and Delaware."  (*Id.*).

For the reasons stated previously in reference to the Court's analysis of Defendant's Rule 9 Motion, "Black Lives Matter" is a *social movement* that lacks the capacity to be sued.  *See* discussion *supra* Section II.B.2.  In fact, in his Proposed Amended Complaint, Plaintiff *himself* refers to "Black Lives Matter" as a "movement"

---

[1] The Court notes that if Plaintiff were not bearing his own costs, which otherwise would be borne by the taxpayers, 28 U.S.C. § 1915(e)(2)(B)(i) would permit the Court to dismiss this claim as "frivolous": a lawsuit that alleges that a *hashtag* – which is, in essence, an idea – is liable in tort for damages can be properly categorized as "fantastic or delusional."  *Neitzke v. Williams*, 490 U.S. 319, 328 (1989).

on multiple occasions.  (*See, e.g.*, *id.* at ¶ 11 (describing the "Black Lives Matter movement"); *id.* at ¶ 45 (describing the "Black Lives Matter movement"); *id.* at ¶ 48 (describing the "movement's rioters")).  Amending the Complaint to permit Plaintiff to continue to pursue claims against "Black Lives Matter" would be futile because such claims "would be subject to dismissal."  *Ackerson*, 589 F.3d at 208.  For the reasons stated previously, "Black Lives Matter" is a *social movement* that is not a "juridical person" and that lacks the capacity to be sued.

          c.     Mckesson

Plaintiff seeks to amend his complaint to include additional factual allegations in relation to Mckesson's activities and public statements.  Plaintiff seeks to supplement his Complaint with allegations that Mckesson (1) made a statement on a television news program, in which he allegedly "justified the violence" that occurred at a demonstration in Baltimore, Maryland, (*id.* at ¶ 9); (2) engaged in a private conversation that allegedly "shows an intent to use protests to have 'martial law' declared nationwide through protests," (*id.* at ¶ 19); (3) allegedly made a statement to a news website that "people take to the streets as a last resort," which – according to Plaintiff – was a "ratification and justification of . . . violence," (*id.* at ¶ 48); (4) participated in various interviews or speeches during which he allegedly described himself or was described as a "leader" of the "Black Lives Matter" movement or a "participant" in various demonstrations, (*see, e.g.*, *id.* at ¶¶ 10, 11, 13, 45, 55, 58); (5) "ratified all action taken during the Baton Rouge protest," (*id.* at ¶ 39); and (6) "incited criminal conduct that cause[d] injury," (*id.* at ¶ 44).

These supplemental factual allegations do not remedy Plaintiff's failure to state a plausible claim for relief against Mckesson.  *See* discussion *supra* Section II.A.2.  Plaintiff's allegations that Mckesson "ratified all action," (*id.* at ¶ 39), and "incited criminal conduct," (*id.* at ¶ 44), are nothing but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which "do not suffice" to survive a Rule 12(b)(6) motion to dismiss.  *Iqbal*, 556 U.S. at 678. Plaintiff's Proposed Amended Complaint is devoid of any facts, aside from these broad conclusory allegations, that tend to suggest that Mckesson made any statements or engaged in any conduct that "authorized, directed, or ratified" the unidentified demonstrator's act of throwing a rock at Plaintiff.  *Claiborne Hardware*, 458 U.S. at 927.

Further, the additional public statements[2] that Plaintiff has pleaded do not support a plausible claim for relief against Mckesson.  Rather than including the actual statement that Mckesson allegedly made on a television news program, Plaintiff merely pleads that Mckesson "justified the violence," (*id.* at ¶ 9); this is a "[t]hreadbare recital[] of the elements of a cause of action," which is "supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.  Mckesson's alleged statement that "people take to the streets as a last resort," (*id.* at ¶ 48), similarly cannot give rise to a cause of action:  it is not plausible that this statement could be "likely to

---

[2] Setting aside Plaintiff's description of it in mere conclusory terms, the conversation in which Plaintiff alleges that Mckesson "show[ed] an intent to use protests to have 'martial law' declared nationwide through protests," Doc. 52-4 at ¶ 19, is a *private* conversation that cannot give rise to liability in tort for the actions of other demonstrators.  *See Claiborne Hardware*, 458 U.S. at 927 (holding that liability may only be imposed on a person for the tortious acts of others with whom the person associated if his "*public* speech" meets certain criteria (emphasis added)).

incite lawless action" or be of such a character that it could serve as "evidence that [he] gave other specific instructions" to the unidentified demonstrator to throw a rock at Plaintiff. *Claiborne Hardware*, 458 U.S. at 927.  Moreover, to premise Mckesson's liability on the sole basis of his public statements in which he identified himself as a "leader" of the "Black Lives Matter" movement or a "participant" in various demonstrations, (*see, e.g.*, *id.* at ¶¶ 10, 11, 13, 45, 55, 58), would impermissibly impose liability on Mckesson for merely exercising his right of association.  *See id.* at 925-26 ("[M]ere association with [a] group – absent a specific intent to further an unlawful aim embraced by that group – is an insufficient predicate for liability.").

Plaintiff therefore has failed to remedy the deficiencies that the Court identified in his Complaint, *see* discussion *supra* Section II.A.2, and thus permitting Plaintiff to amend his Complaint to add various factual allegations against Mckesson would be futile because such claims nonetheless "would be subject to dismissal." *Ackerson*, 589 F.3d at 208.

       d.       Black Lives Matter Network, Inc.

Plaintiff, in his Proposed Amended Complaint, seeks to add Black Lives Matter Network, Inc., as a Defendant in this case.  Plaintiff discovered the existence of Black Lives Matter Network, Inc., after making a donation through a website that is allegedly identified with the "Black Lives Matter" movement; the receipt from the donation indicated that Black Lives Matter Network, Inc., was the entity that received the donation.

While Black Lives Matter Network, Inc., certainly is an entity that has the

capacity to be sued, *see* La. Civ. Code art. 24, Plaintiff has failed to state a plausible claim for relief against that entity in his Proposed Amended Complaint.  For an entity such as Black Lives Matter Network, Inc., to be held liable in tort for damages caused during a demonstration, a plaintiff must demonstrate that the tortious act was committed by one of the entity's "agents . . . within the scope of their actual or apparent authority."  *Claiborne Hardware*, 458 U.S. at 930.  Such an entity also may "be found liable for other conduct of which it had knowledge and specifically ratified."  *Id.*

Plaintiff's only attempt at characterizing the unidentified tortfeasor as an agent of Black Lives Matter Network, Inc., is located in paragraph 37 of the Proposed Amended Complaint, in which Plaintiff alleges that the tortfeasor was a "member of Defendant Black Lives Matter, under the control and custody of Defendants."  (*Id.* at ¶ 37).  Not only does Plaintiff specifically fail to mention Black Lives Matter Network, Inc., whatsoever, but Plaintiff also fails to allege that such an agency relationship existed between the tortfeasor and "Defendants" with anything more than a "[t]hreadbare recital[] of the elements" of agency, "supported by [a] mere conclusory statement[]."  *Iqbal*, 556 U.S. at 678.  Further, Plaintiff has failed to plead that Black Lives Matter Network, Inc., in particular, "had knowledge and specifically ratified" the unidentified tortfeasor's act of throwing a rock at Plaintiff, *Claiborne Hardware*, 458 U.S. at 930; Plaintiff merely alleges, in a conclusory fashion, that "Black Lives Matter leadership ratified all action taken during the protest," (*id.* at ¶ 39), and that "Black Lives Matter promoted and ratified" the tortious conduct that gave rise to this

suit, (*id.* at ¶ 44).

These allegations are insufficient to state a plausible claim for relief against Black Lives Matter Network, Inc.   Not only are these allegations "conclusory statements," but they also do not identify any connection between this particular entity – Black Lives Matter Network, Inc. – and the particular tortious activity. *Iqbal*, 556 U.S. at 678.  As the Supreme Court noted in *Claiborne Hardware*, allowing Plaintiff to proceed against Black Lives Matter Network, Inc., in this case – based solely on these conclusory allegations – "would impermissibly burden the rights of political association that are protected by the First Amendment."   458 U.S. at 931. Therefore, allowing Plaintiff to amend his Complaint to add Black Lives Matter Network, Inc., as a Defendant in this matter would be futile because such claims "would be subject to dismissal";[3] Plaintiff has failed to state a plausible claim for relief against Black Lives Matter Network, Inc., in his Proposed Amended Complaint. *Ackerson*, 589 F.3d at 208.

### 3.   Conclusion

Therefore, the Court finds that Plaintiff has failed to plead a plausible claim for relief against any of the Defendants that he identified in his Proposed Amended Complaint.  The Court thus denies Plaintiff leave to amend his Complaint because the "filing of the amended complaint would be futile."  *Varela*, 773 F.3d at 707.

---

[3] Black Lives Matter Network, Inc., indeed has filed a motion to dismiss in the event that the Court permitted Plaintiff to amend his Complaint to add it as a Defendant.  *See* Doc. 68.

### D.     Dismissal with Prejudice

For the reasons stated above, the Court finds that Plaintiff has failed to state a plausible claim for relief against either Mckesson or "Black Lives Matter," the only Defendants named in Plaintiff's initial Complaint.  *See* discussion *supra* Section II.A-.B.   Under normal circumstances, the Court would dismiss this matter without prejudice to provide Plaintiff with an opportunity to ameliorate the deficiencies that the Court has identified in his Complaint.

Plaintiff has had ample opportunity, however, following the briefing and argument on Defendant's Rule 12 and Rule 9 Motions to demonstrate to the Court that he can state a plausible claim for relief against an individual or entity.   In response to the arguments raised by Mckesson in his Motions and by the Court during oral argument on the Motions, Plaintiff nonetheless produced a Proposed Amended Complaint that not only fails to state a plausible claim for relief against any of the named Defendants, but that also attempts to hold a *hashtag* liable for damages in tort.   The Court therefore finds that granting leave to Plaintiff to attempt to file a Second Proposed Amended Complaint would be futile.   The Court also notes that Plaintiff's attempt to bring suit against a social movement and a hashtag evinces either a gross lack of understanding of the concept of capacity or bad faith, which would be an independent ground to deny Plaintiff leave to file a Second Proposed Amended Complaint.   The Court therefore shall dismiss this matter with prejudice. *See Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

III.   CONCLUSION

Accordingly,

IT IS ORDERED that **Defendant DeRay Mckesson's Motion to Dismiss (Doc. 15)** is **GRANTED.**

IT IS FURTHER ORDERED that **Defendant DeRay Mckesson's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 9(a) (Doc. 43)** is **GRANTED**.

IT IS FURTHER ORDERED that the **Motion to File Amended Complaint for Damages (Doc. 52)** filed by Plaintiff is **DENIED**.

IT IS FURTHER ORDERED that the above-captioned matter is **DISMISSED WITH PREJUDICE**.

Baton Rouge, Louisiana, this *28th* day of September, 2017.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**