# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-30864

OFFICER JOHN DOE, Police Officer,

    Plaintiff – Appellant

v.

DERAY MCKESSON; BLACK LIVES MATTER; BLACK LIVES MATTER NETWORK, INCORPORATED,

    Defendants - Appellees

Appeal from the United States District Court
for the Middle District of Louisiana

ON REQUEST FOR A POLL
Opinion 945 F.3d 818 (5th Cir. Dec. 16, 2019)

Before JOLLY, ELROD, and WILLETT, Circuit Judges.

PER CURIAM:

    The court having been polled at the request of one of its members, and a majority of the judges who are in regular service and not disqualified not having voted in favor (Fed. R. Ap. P. 35 and 5th Cir. R. 35), rehearing en banc is DENIED. In the en banc poll, eight judges in favor of rehearing (Judge Stewart, Judge Dennis, Judge Southwick, Judge Graves, Judge Higginson, Judge Costa, Judge Willett, and Judge Duncan), and eight judges voted against

rehearing (Chief Judge Owen, Judge Jones, Judge Smith, Judge Elrod, Judge Haynes, Judge Ho, Judge Engelhardt, and Judge Oldham).

Judge Ho concurred with the Court's denial of rehearing en banc, his Concurrence is attached. Judge Dennis, joined by Judge Graves, and Judge Higginson, joined by Judge Dennis, dissent from the Court's denial of rehearing en banc, their Dissents are attached.

ENTERED FOR THE COURT:

    /s/  E. Grady Jolly
United States Circuit Judge

Case: 17-30864 Document: 00515288352 Page: 3 Date Filed: 01/28/2020
Case 3:16-cv-00742-BAJ-RLB Document 83 01/28/20 Page 3 of 10

No. 17-30864

JAMES C. HO, Circuit Judge, concurring in denial of rehearing en banc:

I agree with my colleagues who voted to grant rehearing en banc that this lawsuit by a police officer against DeRay Mckesson, a leader of the Black Lives Matter movement, should not proceed. I nevertheless voted to deny rehearing en banc. I write to briefly explain why, in the hope that this explanation might help finally bring this suit to an end.

I.

Police officers and firefighters dedicate their lives to protecting others, often putting themselves in harm's way. These are difficult and dangerous jobs, and citizens owe a debt of gratitude to those who are willing and able to perform them. What's more, police officers and firefighters assume the risk that they may be injured in the line of duty. So they are not allowed to recover damages from those responsible for their injuries, under a common law rule known as the professional rescuer doctrine.

"The professional rescuer doctrine, the fireman's rule, is a common law rule that either bars recovery by a professional rescuer injured in responding to an emergency or requires the rescuer to prove a higher degree of culpability in order to recover." *Gallup v. Exxon Corp.*, 70 F. App'x 737, 738 (5th Cir. 2003) (collecting Louisiana cases). "The Professional Rescuer's Doctrine is a jurisprudential rule that essentially states that a professional rescuer, such as a fireman or a policeman, who is injured in the performance of his duties, 'assumes the risk' of such an injury and is not entitled to damages"—particularly when the "risks arise from the very emergency that the professional rescuer was hired to remedy." *Gann v. Matthews*, 873 So.2d 701, 705–6 (La. Ct. App. 2004).

This doctrine would seem to require immediate dismissal of this suit. After all, there is no dispute that the officer was seriously injured in the line of duty—specifically, while policing a Black Lives Matter protest that unlawfully

Case: 17-30864     Document: 00515288352     Page: 4     Date Filed: 01/28/2020
Case 3:16-cv-00742-BAJ-RLB     Document 83     01/28/20     Page 4 of 10

No. 17-30864

obstructed a public highway and then turned violent. The officer deserves our profound thanks, sympathy, and respect. But his case would appear to fall squarely within the scope of the doctrine.

None of the panel opinions in this case addressed the professional rescuer doctrine, however—presumably because Mckesson never raised it. I imagine that, if given the chance on remand, he will invoke the doctrine at last, and that the district court will terminate this suit (again) accordingly.

Had Mckesson raised this doctrine at an earlier stage in the suit, there would have been no need to answer the more challenging First Amendment questions that now animate his petition for rehearing en banc. But he did not. So, like the panel, I turn to those questions now.

II.

Because Mckesson has thus far neglected to invoke the professional rescuer doctrine, the panel confronted novel and interesting First Amendment issues that are arguably worthy of rehearing en banc. But I take some comfort in the fact that, upon closer review of the panel opinions, the constitutional concerns that have generated the most alarm may not be as serious as feared.

The First Amendment indisputably protects the right of every American to condemn police misconduct.[1] And that protection secures the citizen protestor against not only criminal penalty, but civil liability as well. *See*, *e.g.*, *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982).

But there are important differences between the theory of liability held invalid in *Claiborne Hardware* and the tort liability permitted by the panel majority here. In *Claiborne Hardware,* the defendants were sued for leading

---

[1] Indeed, it is important to condemn such misconduct when it occurs. *See*, *e.g.*, *United States v. Taffaro*, 919 F.3d 947, 949–51 (5th Cir. 2019) (Ho, J., concurring in the judgment); *Wilson v. City of Southlake*, 936 F.3d 326, 333–34 (5th Cir. 2019) (Ho, J., concurring in the judgment).

Case: 17-30864   Document: 00515288352   Page: 5   Date Filed: 01/28/2020
Case 3:16-cv-00742-BAJ-RLB   Document 83   01/28/20   Page 5 of 10

No. 17-30864

a boycott of white merchants. State courts subsequently held the defendants liable for all of the economic damages caused by their boycott.

Notably, the theory of liability rejected in *Claiborne Hardware* was inherently premised on the *content* of expressive activity. If the defendants had advocated in *favor* of the white merchants, no court would have held them liable for such speech. So the tort liability theory adopted by the state courts necessarily turned on the content of the defendants' expressive activities. And the Supreme Court rejected this content-based theory of liability as a violation of the First Amendment. *See, e.g., id.* at 914 ("[T]he petitioners certainly foresaw—and directly intended—that the merchants would sustain economic injury as a result of their campaign. . . . [But t]he right of the States to regulate economic activity could not justify a complete prohibition against a nonviolent, politically motivated boycott designed to force governmental and economic change and to effectuate rights guaranteed by the Constitution itself.").

By contrast, the theory of liability adopted in this case appears to be neutral as to the content of the Black Lives Matter protest. Unlike *Claiborne Hardware*, liability here turns not on the content of the expressive activity, but on the unlawful obstruction of the public highway and the injuries that foreseeably resulted. This is an important distinction. As *Claiborne Hardware* itself observed: "While the State legitimately may impose damages for the consequences of violent conduct, it may not award compensation for the consequences of nonviolent, protected activity." *Id.* at 918. "Only those losses proximately caused by unlawful conduct may be recovered." *Id.*

So in sum: Content-based damages are generally impermissible, as *Claiborne Hardware* illustrates. But content-neutral rules typically survive First Amendment challenge. *See, e.g., Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ("Our cases make clear . . . that even in a public forum the government may impose reasonable restrictions on the time, place, or manner

of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'") (collecting cases).

Applying that framework here, I do not understand the panel majority to suggest that Mckesson may be held liable for lawfully protesting police—that would be a textbook violation of established First Amendment doctrine, including *Claiborne Hardware*—but rather for injuries following the unlawful obstruction of a public highway. As the panel explained, "the criminal conduct allegedly ordered by Mckesson was not itself protected by the First Amendment, as Mckesson ordered the demonstrators to violate a reasonable time, place, and manner restriction by blocking the public highway. As such, no First Amendment protected activity is suppressed by allowing the consequences of Mckesson's conduct to be addressed by state tort law." *Doe v. Mckesson*, 945 F.3d 818, 832 (5th Cir. 2019) (citation omitted). In the face of such limiting language, any First Amendment concern about the potential reach of the panel majority opinion strikes me as uncertain and speculative.[2]

---

[2] By contrast, there was no such ambiguity in a recent decision of our court—one that presented even starker First Amendment concerns—yet we nevertheless denied rehearing en banc. *See Zimmerman v. City of Austin*, 888 F.3d 163 (5th Cir. 2018). I say starker because the First Amendment surely protects political speech at least as much as it protects protests—and because a state surely has a greater interest in protecting police officers from assault than in preventing citizens from donating over $350 to a city council race. As the ACLU once noted, "[c]ontributions are crucially important in determining the level of political debate and in implementing the freedom of association guaranteed by the First Amendment. . . . If anything, Americans spend too little to finance the process by which their government is chosen." Brief of the Appellants, at 27–28, *Buckley v. Valeo*, 424 U.S. 1 (1976). *See also Buckley*, 424 U.S. at 288 (Marshall, J., concurring in part and dissenting in part) ("[A]ll Members of the Court agree . . . money is essential for effective communication in a political campaign."); *Thompson v. Hebdon*, 140 S. Ct. 348, 350 (2019) (per curiam) ("JUSTICE BREYER's opinion for the plurality observed that 'contribution limits that are too low can . . . harm the electoral process by preventing challengers from mounting effective campaigns against incumbent officeholders, thereby reducing democratic accountability.'") (quoting *Randall v. Sorrell*, 548 U.S. 230, 249 (2006)).

Case: 17-30864 Document: 00515288352 Page: 7 Date Filed: 01/28/2020
Case 3:16-cv-00742-BAJ-RLB Document 83 01/28/20 Page 7 of 10

No. 17-30864

So if I understand the panel majority's theory of liability correctly, it may be expansive—and it may be wrong as a matter of Louisiana law, as Judge Higginson's typically thoughtful dissent suggests. But it applies with equal force to pro-police protestors (just as it would, say, to pro-life and pro-choice protestors alike) who unlawfully obstruct a public highway and then break out into violence. It is far from obvious, then, that the First Amendment principles articulated in *Claiborne Hardware* would have any bearing here (and we do not ordinarily grant en banc rehearing to resolve questions of state law).

\* \* \*

Civil disobedience enjoys a rich tradition in our nation's history. But there is a difference between civil disobedience—and civil disobedience without consequence.[3] Citizens may protest. But by protesting, the citizen does not suddenly gain immunity to violate traffic rules or other laws that the rest of us are required to follow. The First Amendment protects protest, not trespass.

That said, this lawsuit should not proceed for an entirely different reason—the professional rescuer doctrine. I trust the district court will faithfully apply that doctrine if and when Mckesson invokes it, and dismiss the suit on remand, just as it did before. It is for that reason that I am comfortable concurring in the denial of rehearing en banc.

---

[3] Indeed, for the civil disobedient, the consequence is the point. *See, e.g.*, Henry David Thoreau, *Civil Disobedience* (1849) ("Under a government which imprisons any unjustly, the true place for a just man is also a prison."); Martin Luther King Jr., *Letter from a Birmingham Jail* (1963) ("Of course, there is nothing new about this kind of civil disobedience. It was seen sublimely in the refusal of Shadrach, Meshach, and Abednego to obey the laws of Nebuchadnezzar because a higher moral law was involved. It was practiced superbly by the early Christians, who were willing to face hungry lions and the excruciating pain of chopping blocks before submitting to certain unjust laws of the Roman Empire. To a degree, academic freedom is a reality today because Socrates practiced civil disobedience.").

7

No. 17-30864

JAMES L. DENNIS, Circuit Judge, joined by JAMES E. GRAVES, Circuit Judge, dissenting:

I respectfully dissent from the court's refusal to rehear en banc a 2–1 panel opinion that not only misapplies Louisiana's duty-risk analysis, as Judge Higginson's dissent, *infra*, points out, but also fails to uphold the clearly established First Amendment principles enshrined in *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982). *Claiborne Hardware* reaffirmed this country's "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Claiborne*, 458 U.S. at 913 (cleaned up). Thus, when violence or threats of violence "occur[] in the context of constitutionally protected activity, . . . precision of regulation is demanded," including an inquiry into whether the defendant "authorized, ratified, or directly threatened acts of violence." *Id.* at 916, 929. The panel majority demands no such precision. Instead, it appears to apply a free-wheeling form of strict liability having no resemblance to Louisiana law's careful duty-risk analysis, concluding that, because of his association with the demonstrators or his failure to anticipate and prevent the rock throwing incident, Mckesson can be held liable—despite the First Amendment protection historically afforded protest activity—for the acts of a "mystery attacker." *Doe v. Mckesson*, 945 F.3d 818, 842 (5th Cir. 2019) (Willett, J., dissenting). The majority of our colleagues have thus grievously failed to do what should have been done: Take up this case, apply the longstanding protections of the First Amendment, and conclude, as the district court did, that Doe's lawsuit against DeRay Mckesson should be dismissed. *See Doe v. Mckesson*, 272 F. Supp. 3d 841, 852–53 (M.D. La. 2017).

No. 17-30864

STEPHEN A. HIGGINSON, Circuit Judge, joined by JAMES L. DENNIS, Circuit Judge, dissenting:

The panel opinion holds that the First Amendment affords no protection to McKesson because he was negligent under Louisiana law. I do not believe the Louisiana Supreme Court would recognize a negligence claim in this situation. When a negligence claim is based on the violation of a statute, Louisiana courts allow recovery only if the plaintiff's injury falls within "the scope of protection intended by the legislature." *Lazard v. Foti*, 859 So. 2d 656, 661 (La. 2003). An assault on a police officer by a third-party is not the "particular risk" addressed by the highway obstruction statute. *Id*. Absent the breach of this statutory duty, it is unclear on what basis the panel opinion finds that the protest was foreseeably violent.

To the extent that the panel opinion creates a new Louisiana tort duty, this is "a policy decision" for Louisiana courts—not this court—to make. *See Posecai v. Wal-Mart Stores, Inc.*, 752 So. 2d 762, 766 (La. 1999); *see also Meador v. Apple*, 911 F.3d 260, 267 (5th Cir. 2018). Even if we could make this policy decision ourselves, the panel opinion does not weigh the "moral, social, and economic factors" the Louisiana Supreme Court has identified as relevant, including "the nature of defendant's activity" and "the historical development of precedent." *Posecai*, 752 So. 2d at 766. In light of the vital First Amendment concerns at stake, I respectfully suggest that these considerations counsel against our court recognizing a new Louisiana state law negligence duty here, at least in a case where argument from counsel has not been received. Protestors of all types and causes have been blocking streets in Louisiana for decades without Louisiana courts recognizing any similar claim.

For these reasons, I dissent.

# United States Court of Appeals
**FIFTH CIRCUIT**
OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
Suite 115
**NEW ORLEANS, LA 70130**

January 28, 2020

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

   No. 17-30864   John Doe v. DeRay Mckesson, et al
                 USDC No. 3:16-CV-742

Enclosed is an order entered in this case.

                        Sincerely,

                        LYLE W. CAYCE, Clerk

                        By: _____
                        Nancy F. Dolly, Deputy Clerk
                        504-310-7683

Mr. Ian Lewis Atkinson
Ms. Christine Marie Calogero
Mr. William P. Gibbens
Mr. David Thomas Goldberg
Mrs. Donna Unkel Grodner
Mr. Michael L. McConnell