### IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

No. 17-30864

United States Court of Appeals
Fifth Circuit
**FILED**
April 24, 2019

Lyle W. Cayce
Clerk

OFFICER JOHN DOE, Police Officer,

    Plaintiff - Appellant

v.

DERAY MCKESSON; BLACK LIVES MATTER; BLACK LIVES MATTER NETWORK, INCORPORATED,

    Defendants - Appellees

---

Appeal from the United States District Court
for the Middle District of Louisiana

---

Before JOLLY, ELROD, and WILLETT, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

    During a public protest against police misconduct in Baton Rouge, Louisiana, an unidentified individual hit Officer John Doe with a heavy object, causing him serious physical injuries. Following this incident, Officer Doe brought suit against "Black Lives Matter," the group associated with the protest, and DeRay Mckesson, one of the leaders of Black Lives Matter and the organizer of the protest. Officer Doe later sought to amend his complaint to add Black Lives Matter Network, Inc. and #BlackLivesMatter as defendants. The district court dismissed Officer Doe's claims on the pleadings under Federal Rule of Civil Procedure 12(b)(6), and denied his motion to amend his

EXHIBIT A

Case: 17-30864    Document: 00514929432    Page: 2    Date Filed: 04/24/2019
Case 3:16-cv-00742-BAJ-RLB   Document 92-2   09/03/20   Page 2 of 17

No. 17-30864

complaint as futile. Because we conclude that the district court erred in dismissing the case against Mckesson on the basis of the pleadings, we REMAND for further proceedings relative to Mckesson. We further hold that the district court properly dismissed the claims against Black Lives Matter.[1] We thus REVERSE in part, AFFIRM in part, and REMAND for further proceedings not inconsistent with this opinion.

I.

On July 9, 2016, a protest took place by blocking a public highway in front of the Baton Rouge Police Department headquarters.[2] This demonstration was one in a string of protests across the country, often associated with Black Lives Matter, concerning police practices. The Baton Rouge Police Department prepared by organizing a front line of officers in riot gear. These officers were ordered to stand in front of other officers prepared to make arrests. Officer Doe was one of the officers ordered to make arrests. DeRay Mckesson, associated with Black Lives Matter, was the prime leader and an organizer of the protest.

In the presence of Mckesson, some protesters began throwing objects at the police officers. Specifically, protestors began to throw full water bottles, which had been stolen from a nearby convenience store. The dismissed complaint further alleges that Mckesson did nothing to prevent the violence or to calm the crowd, and, indeed, alleges that Mckesson "incited the violence on behalf of [Black Lives Matter]." The complaint specifically alleges that Mckesson led the protestors to block the public highway. The police officers

---

[1] We do not address any of the allegations raised by the Proposed Amended Complaint. *See* note 5, *infra*.

[2] This case comes to us on a motion to dismiss, so we treat all well-pleaded facts as true.

Case: 17-30864  Document: 00514929432  Page: 3  Date Filed: 04/24/2019
Case 3:16-cv-00742-BAJ-RLB  Document 92-2  09/03/20  Page 3 of 17

No. 17-30864

began making arrests of those blocking the highway and participating in the violence.

At some point, an unidentified individual picked up a piece of concrete or a similar rock-like object and threw it at the officers making arrests. The object struck Officer Doe's face. Officer Doe was knocked to the ground and incapacitated. Officer Doe's injuries included loss of teeth, a jaw injury, a brain injury, a head injury, lost wages, "and other compensable losses."

Following the Baton Rouge protest, Officer Doe brought suit, naming Mckesson and Black Lives Matter as defendants. According to his complaint, the defendants are liable on theories of negligence, respondeat superior, and civil conspiracy. Mckesson subsequently filed two motions: (1) a Rule 12(b)(6) motion, asserting that Officer Doe failed to state a plausible claim for relief against Mckesson and (2) a Rule 9(a)(2) motion, asserting that Black Lives Matter is not an entity with the capacity to be sued.

Officer Doe responded by filing a motion to amend. He sought leave to amend his complaint to add factual allegations to his complaint and Black Lives Matter Network, Inc. and #BlackLivesMatter as defendants.

II.

The district court granted both of Mckesson's motions, treating the Rule 9(a)(2) motion as a Rule 12(b)(6) motion, and denied Officer Doe's motion for leave to amend, concluding that his proposed amendment would be futile. With respect to Officer Doe's claims against #BlackLivesMatter, the district court took judicial notice that it is a "hashtag" and therefore an "expression" that lacks the capacity to be sued. With respect to Officer Doe's claims against Black Lives Matter Network, Inc. the district court held that Officer Doe's allegations were insufficient to state a plausible claim for relief against this entity. Emphasizing the fact that Officer Doe attempted to add a social

3

Case: 17-30864     Document: 00514929432     Page: 4     Date Filed: 04/24/2019
Case 3:16-cv-00742-BAJ-RLB   Document 92-2   09/03/20   Page 4 of 17

No. 17-30864

movement and a "hashtag" as defendants, the district court dismissed his case with prejudice. Officer Doe timely appealed.

## III.

When considering a motion to dismiss under Rule 12(b)(6), we will not affirm dismissal of a claim unless the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017). "We take all factual allegations as true and construe the facts in the light most favorable to the plaintiff." *Id.* (citing *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017)). To survive, a complaint must consist of more than "labels and conclusions" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal quotation marks and brackets omitted)). Instead, "the plaintiff must plead enough facts to nudge the claims across the line from conceivable to plausible." *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (internal quotation marks, brackets, and ellipses omitted) (quoting *Iqbal*, 556 U.S. at 680).[3]

---

[3] Federal Rule of Civil Procedure Rule 9(a)(2) states that, if a party wishes to raise an issue regarding lack of capacity to be sued, "a party must do so by a specific denial." Rule 12(b) does not specifically authorize a motion to dismiss based on a lack of capacity. Nonetheless, we have permitted Rule 12(b) motions arguing lack of capacity. *See, e.g.*, *Darby v. Pasadena Police Dep't*, 939 F.2d 311 (5th Cir. 1992). Where the issue appears on the face of the complaint, other courts have done the same and treated it as a Rule 12(b)(6) motion. *See, e.g.*, *Klebanow v. N.Y. Produce Exch.*, 344 F.2d 294, 296 n.1 (2d Cir. 1965) ("Although the defense of lack of capacity is not expressly mentioned in [R]ule 12(b), the practice has grown up of examining it by a 12(b)(6) motion when the defect appears upon the face of the complaint."); *Coates v. Brazoria Cty. Tex.*, 894 F.Supp.2d 966, 968 (S.D. Tex. 2012) ("Whether a party has the capacity to sue or be sued is a legal question that may be decided at the Rule 12 stage."); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1294 (3d ed. 2018) ("An effective denial of capacity . . . creates an issue of fact. Such a denial may be made in the responsive pleading or, if the lack of capacity . . . appears on the face of the pleadings or is discernible there from, the issue can be raised by a motion to dismiss for failure to state a claim for relief." (footnotes omitted)). Thus, we review the district court's dismissal for lack of capacity de novo and apply the Rule 12(b)(6) standard.

No. 17-30864

A district court's denial of a motion to amend is generally reviewed for abuse of discretion. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016). However, where the district court's denial of leave to amend was based solely on futility, we instead apply a de novo standard of review identical in practice to the Rule 12(b)(6) standard. *Id.* When a party seeks leave from the court to amend and justice requires it, the district court should freely give it. Fed. R. Civ. P. 15(a)(2).

### IV.

### A.

We begin by addressing Officer Doe's claims against DeRay Mckesson. The district court did not reach the merits of Officer Doe's underlying state tort claims, but instead found that Officer Doe failed to plead facts that took Mckesson's conduct outside of the bounds of First Amendment protected speech and association. Because we ultimately find that Mckesson's conduct at this pleading stage was not necessarily protected by the First Amendment, we will begin by addressing the plausibility of Officer Doe's state tort claims. We will address each of Officer Doe's specific theories of liability in turn—vicarious liability, negligence, and civil conspiracy, beginning with vicarious liability.

### 1.

Louisiana Civil Code article 2320 provides that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions which they are employed." A "servant," as used in the Civil Code, "includes anyone who performs continuous service for another and whose physical movements are subject to the control or right to control of the other as to the manner of performing the service." *Ermert*

5

Case: 17-30864  Document: 00514929432  Page: 6  Date Filed: 04/24/2019
Case 3:16-cv-00742-BAJ-RLB  Document 92-2  09/03/20  Page 6 of 17

No. 17-30864

*v. Hartford Ins. Co.*, 559 So. 2d 467, 476 (La. 1990). Officer Doe's vicarious liability theory fails at the point of our beginning because he does not allege facts that support an inference that the unknown assailant "perform[ed] a continuous service" for or that the assailant's "physical movements [were] subject to the control or right to control" of Mckesson. Therefore, under the pleadings, Mckesson cannot be held liable under a vicarious liability theory.

2.

We now move on to address Officer Doe's civil conspiracy theory. Civil conspiracy is not itself an actionable tort. *Ross v. Conoco, Inc.*, 828 So. 2d 546, 552 (La. 2002). Instead, it assigns liability arising from the existence of an underlying unlawful act. *Id.* In order to impose liability for civil conspiracy in Louisiana, a plaintiff must prove that (1) an agreement existed with one or more persons to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in plaintiff's injury; and (4) there was an agreement as to the intended outcome or result. *Crutcher-Tufts Res., Inc. v. Tufts*, 992 So. 2d 1091, 1094 (La. Ct. App. 2008); *see also* La. Civ. Code art. 2324. "Evidence of . . . a conspiracy can be actual knowledge, overt actions with another, such as arming oneself in anticipation of apprehension, or inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator." *Stephens v. Bail Enf't*, 690 So. 2d 124, 131 (La. Ct. App. 1997).

Officer Doe's complaint is vague about the underlying conspiracy to which Mckesson agreed, or with whom such an agreement was made. In his complaint, Officer Doe refers to a conspiracy "to incite a riot/protest." Disregarding Officer Doe's conclusory allegations, we find that Officer Doe has not alleged facts that would support a plausible claim that Mckesson can be held liable for his injuries on a theory of civil conspiracy. Although Officer Doe has alleged facts that support an inference that Mckesson agreed with

Case: 17-30864   Document: 00514929432   Page: 7   Date Filed: 04/24/2019
Case 3:16-cv-00742-BAJ-RLB   Document 92-2   09/03/20   Page 7 of 17

No. 17-30864

unnamed others to demonstrate illegally on a public highway, he has not pled facts that would allow a jury to conclude that Mckesson colluded with the unknown assailant to attack Officer Doe, knew of the attack and ratified it, or agreed with other named persons that attacking the police was one of the goals of the demonstration. The closest that Officer Doe comes to such an allegation is when he states that Mckesson was "giving orders" throughout the demonstration. But we cannot infer from this quite unspecific allegation that Mckesson ordered the unknown assailant to attack Officer Doe. Lacking an allegation of this pleading quality, Officer Doe's conspiracy claim must and does fail.

3.

Finally, we turn to Officer Doe's negligence theory. Officer Doe alleges that Mckesson was negligent for organizing and leading the Baton Rouge demonstration because he "knew or should have known" that the demonstration would turn violent. We agree as follows.

Louisiana Civil Code article 2315 provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The Louisiana Supreme Court has adopted a "duty-risk" analysis for assigning tort liability under a negligence theory. This theory requires a plaintiff to establish that (1) the plaintiff suffered an injury; (2) the defendant owed a duty of care to the plaintiff; (3) the duty was breached by the defendant; (4) the conduct in question was the cause-in-fact of the resulting harm; and (5) the risk of harm was within the scope of protection afforded by the duty breached. *Lazard v. Foti*, 859 So. 2d 656, 659 (La. 2003). Whether a defendant owes a plaintiff a duty is a question of law. *See Posecai v. Wal-Mart Stores, Inc.*, 752 So. 2d 762, 766 (La. 1999); *Bursztajn v. United States*, 367 F.3d 485, 489 (5th Cir. 2004) ("Under Louisiana law, the existence of a duty presents a question of law that 'varies depending on the facts, circumstances, and context

Case: 17-30864　　　Document: 00514929432　　　Page: 8　　　Date Filed: 04/24/2019
Case 3:16-cv-00742-BAJ-RLB   Document 92-2   09/03/20   Page 8 of 17

No. 17-30864

of each case and is limited by the particular risk, harm, and plaintiff involved.'" (quoting *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994))). There is a "universal duty on the part of the defendant in negligence cases to use reasonable care so as to avoid injury to another." *Boykin v. La. Transit Co.*, 707 So. 2d 1225, 1231 (La. 1998). Louisiana courts elucidate specific duties of care based on consideration of "various moral, social, and economic factors, including the fairness of imposing liability; the economic impact on the defendant and on similarly situated parties; the need for an incentive to prevent future harm; the nature of defendant's activity; the potential for an unmanageable flow of litigation; the historical development of precedent; and the direction in which society and its institutions are evolving." *Posecai*, 752 So. 2d at 766.

We first note that this case comes before us from a dismissal on the pleadings alone. In this context, we find that Officer Doe has plausibly alleged that Mckesson breached his duty of reasonable care in the course of organizing and leading the Baton Rouge demonstration. The complaint specifically alleges that it was Mckesson himself who intentionally led the demonstrators to block the highway. Blocking a public highway is a criminal act under Louisiana law. *See* La. Rev. Stat. Ann. § 14:97. As such, it was patently foreseeable that the Baton Rouge police would be required to respond to the demonstration by clearing the highway and, when necessary, making arrests. Given the intentional lawlessness of this aspect of the demonstration, Mckesson should have known that leading the demonstrators onto a busy highway was most nearly certain to provoke a confrontation between police and the mass of demonstrators, yet he ignored the foreseeable danger to officers, bystanders, and demonstrators, and notwithstanding, did so anyway. By ignoring the foreseeable risk of violence that his actions created, Mckesson failed to exercise reasonable care in conducting his demonstration.

Case: 17-30864    Document: 00514929432    Page: 9    Date Filed: 04/24/2019
Case 3:16-cv-00742-BAJ-RLB    Document 92-2    09/03/20    Page 9 of 17

No. 17-30864

Officer Doe has also plausibly alleged that Mckesson's breach of duty was the cause-in-fact of Officer Doe's injury and that the injury was within the scope of the duty breached by Mckesson. It may have been an unknown demonstrator who threw the hard object at Officer Doe, but by leading the demonstrators onto the public highway and provoking a violent confrontation with the police, Mckesson's negligent actions were the "but for" causes of Officer Doe's injuries. *See Roberts v. Benoit*, 605 So. 2d 1032, 1052 (La. 1992) ("To meet the cause-in-fact element, a plaintiff must prove only that the conduct was a necessary antecedent of the accident, that is, but for the defendant's conduct, the incident probably would not have occurred."). Furthermore, as the purpose of imposing a duty on Mckesson in this situation is to prevent foreseeable violence to the police and bystanders, Officer Doe's injury, as alleged in the pleadings, was within the scope of the duty of care allegedly breached by Mckesson.

We iterate what we have previously noted: Our ruling at this point is not to say that a finding of liability will ultimately be appropriate. At the motion to dismiss stage, however, we are simply required to decide whether Officer Doe's claim for relief is sufficiently plausible to allow him to proceed to discovery. We find that it is.

B.

Having concluded that Officer Doe has stated a plausible claim for relief against Mckesson under state tort law, we will now take a step back and address the district court's determination that Officer Doe's complaint should be dismissed based on the First Amendment. The Supreme Court has made clear that "[t]he First Amendment does not protect violence." *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982). Nonetheless, the district court dismissed the complaint on First Amendment grounds, reasoning that "[i]n order to state a claim against Mckesson to hold him liable for the tortious

9

Case: 17-30864     Document: 00514929432     Page: 10     Date Filed: 04/24/2019
Case 3:16-cv-00742-BAJ-RLB     Document 92-2     09/03/20     Page 10 of 17

No. 17-30864

act of another with whom he was associating during the demonstration, Plaintiff would have to allege facts that tend to demonstrate that Mckesson 'authorized, directed, or ratified specific tortious activity.'" *See id.* at 927. The district court then went on to find that there were no plausible allegations that Mckesson had done so in his complaint.

We respectfully disagree. The district court appears to have assumed that in order to state a claim that Mckesson was liable for his injuries, Officer Doe was required to allege facts that created an inference that Mckesson directed, authorized, or ratified the unknown assailant's specific conduct in attacking Officer Doe. This assumption, however, does not fit the situation we address today. Assuming that the First Amendment is applicable to Mckesson's conduct, in order to counter its applicability at the pleading stage Officer Doe simply needed to plausibly allege that his injuries were one of the "consequences" of "tortious activity," which itself was "authorized, directed, or ratified" by Mckesson in violation of his duty of care. *See id.* ("[A] finding that [the defendant] authorized, directed, or ratified specific tortious activity would justify holding him responsible for the consequences of that activity."). Our discussion above makes clear that Officer Doe's complaint does allege that Mckesson directed the demonstrators to engage in the criminal act of occupying the public highway, which quite consequentially provoked a confrontation between the Baton Rouge police and the protesters, and that Officer Doe's injuries were the foreseeable result of the tortious and illegal conduct of blocking a busy highway. Thus, on the pleadings, which must be read in a light most favorable to Officer Doe, the First Amendment is not a bar to Officer Doe's negligence theory. The district court erred by dismissing Officer Doe's complaint—at the pleading stage—as barred by the First Amendment.

No. 17-30864

## C.

Now we turn our attention to whether Officer Doe has stated a claim against Black Lives Matter. The district court took judicial notice that "'Black Lives Matter,' as that term is used in the Complaint, is a *social movement* that was catalyzed on social media by the persons listed in the Complaint in response to the perceived mistreatment of African-American citizens by law enforcement officers." Based on this conclusion, the district court held that Black Lives Matter is not a "juridical person" capable of being sued. *See Ermert*, 559 So. 2d at 474. We first address the district court's taking of judicial notice, then Black Lives Matter's alleged capacity to be sued.

Federal Rule of Evidence 201 provides that a court may take judicial notice of an "adjudicative fact" if the fact is "not subject to reasonable dispute" in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned. Fed. R. Evid. 201(b). "Rule 201 authorizes the court to take notice only of 'adjudicative *facts*,' not legal determinations." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998). In *Taylor*, we held that another court's state actor determination was not an "adjudicative fact" within the meaning of Rule 201 because "[w]hether a private party is a state actor for the purposes of § 1983 is a mixed question of fact and law and is thus subject to our *de novo* review." *Id.* at 830–31. We further held that the state-actor determination was not beyond reasonable dispute where it "was, in fact, disputed by the parties" in the related case. *Id.* at 830.

We think that the district court was incorrect to take judicial notice of a mixed question of fact and law when it concluded that Black Lives Matter is a "*social movement*, rather than an organization or entity of any sort." The legal status of Black Lives Matter is not immune from reasonable dispute; and,

11

Case: 17-30864    Document: 00514929432    Page: 12    Date Filed: 04/24/2019
Case 3:16-cv-00742-BAJ-RLB    Document 92-2    09/03/20    Page 12 of 17

No. 17-30864

indeed, it is disputed by the parties—Doe claiming that Black Lives Matter is a national unincorporated association, and Mckesson claiming that it is a movement or at best a community of interest. This difference is sufficient under our case law to preclude judicial notice.

We should further say that we see the cases relied on by the district court as distinguishable. Each deals with judicial notice of an aspect of an entity, not its legal form. *See United States v. Parise*, 159 F.3d 790, 801 (3d Cir. 1998) (holding that the court could take judicial notice of the *aims* and *goals* of a movement); *Atty. Gen. of U.S. v. Irish N. Aid. Comm.*, 530 F.Supp.241, 259–60 (S.D.N.Y. 1981) (stating the court could take "notice that the IRA is a 'Republican movement,' *at least insofar as it advocates a united Ireland*" (emphasis added)); *see also Baggett v. Bullitt*, 377 U.S. 360, 376 n.13 (1964) (noting that "[t]he lower court took judicial notice of the fact that the Communist Party of the United States . . . was *a part of* the world Communist movement" (emphasis added)).

Now, we move on to discuss the merits of Officer Doe's contention that Black Lives Matter is a suable entity. He alleges that Black Lives Matter "is a national incorporated association with chapter [sic] in many states." Under Federal Rule of Civil Procedure 17(b), the capacity of an entity "to sue or be sued is determined . . . by the law of the state where the court is located." Under Article 738 of the Louisiana Code of Civil Procedure, "an unincorporated association has the procedural capacity to be sued in its own name." The Louisiana Supreme Court has held that "an unincorporated association is created in the same manner as a partnership, by a contract between two or more persons to combine their efforts, resources, knowledge or activities for a purpose other than profit or commercial benefit." *Ermert*, 559 So. 2d at 473. "Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code Ann. art. 2045. To show intent, "the object of the

Case: 17-30864 Document: 00514929432 Page: 13 Date Filed: 04/24/2019
Case 3:16-cv-00742-BAJ-RLB Document 92-2 09/03/20 Page 13 of 17

No. 17-30864

contract of association must necessarily be the creation of an entity whose personality 'is distinct from that of its members.'" *Ermert*, 559 So. 2d at 474 (quoting La. Civ. Code Ann. art. 24). Louisiana law does not provide for a public display of the parties' intent. *Id.*

Louisiana courts have looked to various factors as indicative of an intent to create an unincorporated association, including requiring dues, having insurance, ownership of property, governing agreements, or the presence of a formal membership structure. *See Bogue Lusa Waterworks Dist. v. La. Dep't of Envtl. Quality*, 897 So. 2d 726, 728–729 (La. Ct. App. 2004) (relying on organization's unfiled articles of incorporation); *Friendship Hunting Club v. Lejeune*, 999 So. 2d 216, 223 (La. Ct. App. 2008) (relying on organization's required dues and possession of an insurance policy); *see also Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F.Supp.2d 663, 675 (E.D. La. 2010) (relying on organization's formal and determinate membership structure). Lacking at least some of these indicators, Louisiana courts have been unwilling to find an intent to create an unincorporated association. *See, e.g.*, *Ermert*, 559 So. 2d at 474–475 (finding that hunting group was not an unincorporated association because it did not own or lease the property that it was based on, required the permission of one of its alleged members to use the property, and lacked formal rules or bylaws).

Officer Doe has not shown in his complaint a plausible inference that Black Lives Matter is an unincorporated association. His only allegations are that Black Lives Matter: (1) was created by three women; (2) has several leaders, including Mckesson; (3) has chapters in many states; and (4) was involved in numerous protests in response to police practices. He does not allege that it possesses property, has a formal membership, requires dues, or possesses a governing agreement. As such, the complaint lacks any indication that Black Lives Matter possesses the traits that Louisiana courts have

regarded as indicative of an intent to establish a juridical entity. We have no doubt that Black Lives Matter involves a number of people working in concert, but "an unincorporated association . . . . does not come into existence or commence merely by virtue of the fortuitous creation of a community of interest or the fact that a number of individuals have simply acted together." *Id.* at 474. Therefore, we find that the district court did not err in concluding that Officer Doe's complaint has failed plausibly to allege that Black Lives Matter is an entity capable of being sued.

V.

In sum, we hold that Officer Doe has not adequately alleged that Mckesson was vicariously liable for the conduct of the unknown assailant or that Mckesson entered into a civil conspiracy with the purpose of injuring Officer Doe. We do find, however, that Officer Doe adequately alleged that Mckesson is liable in negligence for organizing and leading the Baton Rouge demonstration to illegally occupy a highway. We further find that in this context the district court erred in dismissing the suit on First Amendment grounds. As such, Officer Doe has pleaded a claim for relief against DeRay Mckesson in his active complaint.[4] We also hold that the district court erred by taking judicial notice of the legal status of "Black Lives Matter," but nonetheless find that Officer Doe did not plead facts that would allow us to conclude that Black Lives Matter is an entity capable of being sued.[5]

---

[4] Officer Doe has complained of the lack of discovery in this case, particularly related to his claims against the corporate defendants. Officer Doe is free to argue before the district court that he is entitled to discovery. The district court may then decide whether, in the light of our remand, discovery would be appropriate.

[5] Because we find that Officer Doe has successfully pled a claim, we do not reach the district court's denial of Officer Doe's motion for leave to amend. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 268 n.36 (5th Cir. 2009) (citing *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 358 n.70 (5th Cir. 1989)). It follows that we do not address any of the allegations in the Proposed Amended Complaint or the parties it seeks to add. On remand,

Case: 17-30864 Document: 00514929432 Page: 15 Date Filed: 04/24/2019
Case 3:16-cv-00742-BAJ-RLB Document 92-2 09/03/20 Page 15 of 17

No. 17-30864

Therefore, the judgment of the district court is AFFIRMED in part, REVERSED in part, and the case is REMANDED for further proceedings not inconsistent with this opinion.[6]

AFFIRMED in part, REVERSED in part, and REMANDED.

Officer Doe may seek leave to amend his complaint to add new parties and plead additional facts to support his negligence claim. The district court should determine whether to grant this motion, and any new motions for leave to amend, in the light of our opinion.

[6] On appeal, Officer Doe also argues that the district court erred in denying his request to proceed anonymously as John Doe. He argues that the public nature of his job puts him and his family in danger of additional violence. At the district court, he listed a number of examples of acts of violence against police officers by individuals who may have some connection with Black Lives Matter. In its order, the district court walked through three factors common to anonymous-party suits that we have said "deserve considerable weight." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981). These are: (1) whether the plaintiff is "challeng[ing] governmental activity"; (2) whether the plaintiff will be required to disclose information "of the utmost intimacy"; and (3) whether the plaintiff will be "compelled to admit [his] intention to engage in illegal conduct, thereby risking criminal prosecution." *Id*. at 185. The district court concluded that none of these factors applied to the facts of this case. In response to Officer Doe's argument regarding potential future violence, the district court noted that the incidents Officer Doe listed did not involve Officer Doe and were not related to this lawsuit. In fact, at oral argument before the district court regarding his motion, Officer Doe conceded that he had received no particularized threats of violence since filing his lawsuit. The district court instead saw the incidents Officer Doe listed as evidence of "the generalized threat of violence that all police officers face." As a result, the district found that Doe had not demonstrated a privacy interest that outweighs the "customary and constitutionally embedded presumption of openness in judicial proceedings." *Id*. at 186. We agree with the district court and affirm the denial of Doe's motion to proceed anonymously. In so holding, we emphasize what the Supreme Court said decades ago: "What transpires in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947).

# *United States Court of Appeals*
**FIFTH CIRCUIT**
OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

April 24, 2019

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW

Regarding: Fifth Circuit Statement on Petitions for Rehearing
           or Rehearing En Banc

    No. 17-30864   John Doe v. Deray McKesson, et al
                   USDC No. 3:16-CV-742

---

Enclosed is a copy of the court's decision. The court has entered judgment under FED. R. APP. P. 36. (However, the opinion may yet contain typographical or printing errors which are subject to correction.)

FED. R. APP. P. 39 through 41, and 5TH CIR. R.s 35, 39, and 41 govern costs, rehearings, and mandates. **5TH CIR. R.s 35 and 40 require you to attach to your petition for panel rehearing or rehearing en banc an unmarked copy of the court's opinion or order.** Please read carefully the Internal Operating Procedures (IOP's) following FED. R. APP. P. 40 and 5TH CIR. R. 35 for a discussion of when a rehearing may be appropriate, the legal standards applied and sanctions which may be imposed if you make a nonmeritorious petition for rehearing en banc.

<u>Direct Criminal Appeals</u>. 5TH CIR. R. 41 provides that a motion for a stay of mandate under FED. R. APP. P. 41 will not be granted simply upon request. The petition must set forth good cause for a stay or clearly demonstrate that a substantial question will be presented to the Supreme Court. Otherwise, this court may deny the motion and issue the mandate immediately.

<u>Pro Se Cases</u>. If you were unsuccessful in the district court and/or on appeal, and are considering filing a petition for <u>certiorari</u> in the United States Supreme Court, you do not need to file a motion for stay of mandate under FED. R. APP. P. 41. The issuance of the mandate does not affect the time, or your right, to file with the Supreme Court.

<u>Court Appointed Counsel</u>. Court appointed counsel is responsible for filing petition(s) for rehearing(s) (panel and/or en banc) and writ(s) of certiorari to the U.S. Supreme Court, unless relieved of your obligation by court order. If it is your intention to file a motion to withdraw as counsel, you should notify your client promptly, **and advise them of the time limits for filing for rehearing and certiorari**. Additionally, you MUST confirm that

this information was given to your client, within the body of your motion to withdraw as counsel.

The judgment entered provides that defendants-appellees pay to plaintiff-appellant the costs on appeal. A bill of cost form is available on the court's website www.ca5.uscourts.gov.

Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Nancy F. Dolly, Deputy Clerk

Enclosure(s)

Ms. Christine Marie Calogero
Mr. William P. Gibbens
Mrs. Donna Unkel Grodner