**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **OFFICER JOHN FORD** | * | **CIVIL NO.:** |
| | * | |
| **v.** | * | **16-CR-742-BAJ-RLB** |
| | * | |
| **DERAY MCKESSON AND** | * | |
| **BLACK LIVES MATTER** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT DERAY MCKESSON'S MOTION FOR SUMMARY JUDGMENT**

NOW INTO COURT, through undersigned counsel, comes defendant DeRay Mckesson, who respectfully submits the following memorandum in support of his motion for summary judgment.

**BACKGROUND**

On July 9, 2016, defendant DeRay Mckesson and hundreds of other individuals attended a protest in Baton Rouge, Louisiana in the aftermath of the death of Alton Sterling. Officer John Ford claims that he was injured during that protest by an unknown assailant who hit him in the face with a piece of concrete.[1]

On November 7, 2016, Ford sued Mckesson, contending that Mckesson is responsible for the unknown assailant's actions because Mckesson "negligently organized" the protest. Specifically, Ford alleges:

    (1)    that Mckesson was in Baton Rouge "for the purpose of" "rioting to incite others to violence against police and other law enforcement officers,"[2]

    (2)    that Mckesson "organized" the protest that took place on July 9, 2016,[3] and

---

[1] Amended Complaint, Rec. Doc. 101, ¶ 42.
[2] *Id*. at ¶ 27.

(3)    that Mckesson "was in charge of the protest," gave "orders throughout the day and night," and "incited the violence."[4]

On September 28, 2017, the Court dismissed Ford's complaint for failing to state a claim. The Fifth Circuit reversed, holding that Ford adequately stated a negligence claim because he "plausibly alleged," among other things, (1) that Mckesson "breached his duty in the course of ... organizing and leading the Black Lives Matter protest,"[5] (2) that McKesson "regularly gave orders to the protesters and directed their activity,"[6] and (3) that Ford's injuries "occurred under Mckesson's leadership."[7]

However, the discovery taken in this case has revealed that Ford's allegations are based on nothing more than speculation and hearsay. Ford has presented no evidence that Mckesson "organized" the protest at all. Instead, Ford merely claims that, before the protest, he attended police department briefings at which individuals (whom he could not name) predicted that Mckesson was coming to Baton Rouge to organize a protest and cause violence. Even worse, these briefings were based on reports by unidentified "informants," whom Ford does not know and whose reliability cannot be tested.

According to Ford's own eyewitness testimony, Mckesson did nothing other than attend the protest, and at most directed a few individuals to walk onto Airline Highway (an allegation which Mckesson denies, and which the Fifth Circuit has explained is not tortious conduct *per se*).[8] In addition, Ford admits that he did not see Mckesson leading the protest or inciting violence and that he did not hear Mckesson calling for violence.

---

[3] *Id*. at ¶ 29.
[4] *Id*. at ¶ 33-37.
[5] *Doe v. Mckesson*, 71 F.4th 278, 288 (5th Cir. 2023)
[6] *Id*. at 289.
[7] *Id.*
[8] *Id*.

As is explained further below, the Court should enter summary judgment in favor of Mr. Mckesson on Officer Ford's claims because Mckesson did not breach a duty of care to Ford and because Mckesson was not the cause-in-fact of Ford's injuries.

## LAW AND ARGUMENT

I.    **Summary judgment should be granted when there are no genuinely disputed issues of material fact.**

Under Federal Rule of Civil Procedure 56, a party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law.  The movant bears the initial burden to show that no genuine issue of material fact exists; if met, the burden shifts to the non-movant to produce evidence showing the existence of a genuine issue for trial.[9]  The summary judgment procedure is not limited to certain types of legal or factual disputes.  An issue related to state of mind, like any other issue, may be decided on a properly supported summary judgment motion.[10]

Factual controversies are resolved in favor of the non-moving party, but only when there is an actual controversy and both parties have submitted evidence of contradictory facts.[11]  As the Supreme Court has held, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[12]  The non-movant's burden of production "is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."[13]

---

[9] *See Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013).

[10] *E.g.*, *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1326–27 (5th Cir. 1996) (affirming summary judgment that employer did not intend to cause injury to employee).

[11] *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013).

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)

[13] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted); *see also TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002).

Courts may not assume, in the absence of any proof, that the non-moving party could or would prove the necessary facts.[14]

**II.    Officer Ford cannot prove his negligence claim.**

The only claim remaining in this lawsuit is Ford's cause of action for negligence against Mckesson.[15]  Although the Fifth Circuit held that Ford "plausibly alleged" a negligence claim against Mckesson, it explained that to prove his allegations, Ford must "present specific evidence" that "(1) the plaintiff suffered an injury; (2) the defendant owed a duty of care to the plaintiff; (3) the duty was breached by the defendant; (4) the conduct in question was the cause-in-fact of the resulting harm; and (5) the risk of harm was within the scope of protection afforded by the duty breached."[16]

Based on the facts revealed in discovery, Ford cannot prove his claim.

**A.    Mr. Mckesson did not breach a duty of care by "negligently organizing and leading" the Baton Rouge protest.**

In reversing this Court's dismissal of Ford's complaint, the Fifth Circuit premised its analysis on Ford's allegation that Mckesson "negligently organized" the Baton Rouge protest:

> [Ford] argued that Mckesson had a **duty to exercise reasonable care in organizing the Black Lives Matter protest**, **and that Mckesson breached that duty in organizing the protest in such a manner** where it was reasonably foreseeable that a violent confrontation with the police would result.  We understood Louisiana state law to recognize such a theory of negligence liability.[17]

The Fifth Circuit went on to explain that Ford "plausibly alleged" that Mckesson "**breached his duty** in the course of the latter's **organizing and leading** the Black Lives Matter protest at issue here" and that McKesson "**regularly gave orders** to the protesters and directed

---

[14] *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 391 (5th Cir. 2009).
[15] *Mckesson*, 71 F.4th at 300.
[16] *Id*. at 288.
[17] *Id*. at 284 (emphasis added).

their activity."[18]  The Fifth Circuit also stated that "the fact that [Ford's injuries] occurred **under Mckesson's leadership** support the assertion that he **organized and directed the protest** in such a manner as to create an unreasonable risk that one protester would assault or batter" Ford.[19]

But Ford offers nothing to support his theory that Mckesson breached a duty of care.  As a threshold matter, Ford's claim fails because there is no evidence that Mckesson organized the protest to begin with.  Based on the discovery taken in this case, it is clear that Ford's allegations that Mckesson "organized and led" the protest are rooted entirely in speculation and hearsay, not fact.

Ford testified that, in the aftermath of the Alton Sterling shooting in July 2016, he attended Baton Rouge Police Department briefings at which

> we were informed that because of the shootings that we were going to have Black Lives Matters coming from several states.  We were told that DeRay McKesson was a Black Lives Matter leader and that they were coming to Baton Rouge to try to get a response from the police department, and that it would probably be violent and, you know, that was his track record everywhere that he went, it was a violent protest, so it was preparing for the worst pretty much.[20]

Ford also testified that the Baton Rouge Police Department "had been getting intel that DeRay Mckesson was coming to Baton Rouge, he was going to be the leader of the Black Lives Matter protests."[21]

However, Ford could not identify anyone who provided him this information and explained that the information was based on (1) hearsay obtained from other police departments around the country and (2) statements by an unidentified confidential informant:

---

[18] *Id*. at 288-289 (emphasis added).
[19] *Id*. (emphasis added).
[20] Ex. "A," Ford Depo. Tr. at p. 12, l. 15-25.
[21] *Id*. at p. 26, l. 21-25.

Well, my understanding is they looked at, you know, prior protests from Black Lives Matter in different cities and they talked to the police departments in those cities, you know, about a lot of intel. They also – they had somebody, and I don't know who, but they did have an informant that would call us and give us information on what was being said and done and movements and things like that.[22]

Ford further testified that his "understanding" was that the Baton Rouge Police Department had an "informant" who allegedly was in contact with Mckesson, but Ford stated that he had never spoken to the informant, did not know the name of the informant, and did not see any documents about the informant and what he or she may have reported.[23]

Ultimately, Ford could not provide any facts supporting his claim that Mckesson organized the Baton Rouge protest at all. Instead, he simply repeated information he heard at Baton Rouge Police briefings, and such hearsay evidence cannot defeat summary judgment. As the Fifth Circuit has explained, a party can only dispute summary judgment with evidence that "can be presented in admissible form at trial."[24] Ford offers nothing more than inadmissible hearsay.

### B.    Mr. Mckesson's conduct was not the cause-in-fact of Officer Ford's injuries.

Even if Ford could establish that Mckesson organized the protest, he still could not prove that Mckesson's conduct was "the cause-in-fact of the resulting harm" because there is no evidence that Mckesson caused the unidentified assailant to hit Ford in the face with a piece of concrete.

### 1.    There is no evidence that Mr. Mckesson incited protesters to violence.

Ford admits he did not hear Mckesson incite protesters to violence. Specifically, Ford testified that he heard Mckesson chanting "no justice, no peace, no racist police. That was the

---

[22] *Id.* at p. 13, l. 22-25; p. 14, l. 1-5.
[23] *Id.* at p. 16, l. 1-12.
[24] *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019)

main chant that I actually heard him from his own voice say."[25]   However, he did not hear Mckesson say anything else:

> Q.    Besides that, did you hear him say anything else?
>
> A.    Nothing personal, no.[26]

Ford also admits that he did not see Mckesson engage in any acts of violence or do anything to direct others to engage in any acts of violence:

> Q.    Did you see him making any hand gestures, signaling people, or anything like that?
>
> A.    I don't remember any signaling, like what you're asking, I don't believe.
>
> Q.    Okay.  Did you ever – did you see him throw anything?
>
> A.    Not personally, no, sir.
>
> Q.    Did you see him directing anybody to throw anything?
>
> A.    Not personally, no, sir.[27]

Under questioning by his own attorney, Ford "remembered" that he heard Mckesson tell some of the protesters to follow him into the road, but even that allegation is devoid of any potential for violence:

> Q.    When we gave you your [answers to requests for] admissions, we asked you, did you hear him giving orders, and you said you did.  So is your -- what's with your memory?  Are you having memory problems?  Are you confused?
>
> A.    That's why I try to say I don't recall because I do, I have some memory problems, but, you know, I'm just trying to remember specifically, like, hearing him giving like -- I know that he -- **I did say that he told them to come out into the road, didn't I?**
>
> Q.    Yes, you did.

---

[25] Ex. "A" at p. 38, l. 15-17.
[26] *Id.*, l. 18-20.
[27] *Id.* at p. 43, l. 6-17.

A.    Okay.  Well, that's -- **that's the only time then.**  I'm sorry.  I do recall that, but I don't -- **I don't recall any other specific orders given, just him, you know, having them follow him, you know, into the road and stuff like that.**

Q.    Okay.  You're not saying you didn't hear other orders, but you do have specific recollection of him telling people to come out into the road and block the highway, correct?

A.    That I -- yeah, that -- that I personally heard.  I'm sorry.  I probably didn't make that clear.[28]

However, even accepting that allegation as true (and Mckesson does not), Ford cannot explain how simply leading individuals onto the road would cause an unidentified individual to hit him in the face with a piece of concrete.  Indeed, even the Fifth Circuit explained that the alleged "highway obstruction" alone is not enough to prove Ford's case:

> Next, Mckesson protests that the "specific tortious activity" he directed is, at most, obstructing a public highway, that the unidentified demonstrator's assault on Doe is not a natural consequence of that tortious activity, and that the First Amendment therefore does not allow State law to hold him liable for that unrelated result. According to Mckesson, the prohibition on highway obstruction is principally concerned with traffic safety, not police safety. This objection misunderstands the precise tortious activity for which Doe seeks to hold Mckesson liable. **Doe does not assert highway obstruction as a tort** *per se.* **Rather, he asserts that Mckesson's direction of the protesters to obstruct Interstate 12 is** *evidence* **that Mckesson breached his duty to refrain from creating the conditions in which it is likely that a third party will injure someone by an unlawful act**.[29]

The Fifth Circuit further explained that:

> Of course, **this is not Doe's only evidence that Mckesson breached his duty of care**. As explained above, Doe also alleges, among other things, **that Mckesson organized the protest** to begin in front of the Baton Rouge police station; that Doe did nothing to prevent the demonstrators from looting the grocery store and

---

[28] *Id*. at p. 97, l. 1-25; p. 98 l. 1-3 (emphasis added).
[29] *Mckesson*, 71 F.4th at 298 (emphasis added).

throwing water bottles at the police, despite **Mckesson's exercising some amount of direction and control over the protest**; and that Mckesson had participated in similar protests across the country, which had also resulted in violence to others and damage to property.[30]

Accepting Ford's testimony about the highway obstruction as true, this one piece of evidence is not enough to carry Ford's burden of proof, considering (1) the absence of any evidence that Mckesson organized the protest or led the protesters and (2) Ford's admissions that he did not see or hear Mckesson incite violence.

> ### 2.    Officer Ford's allegations against Mr. Mckesson are based entirely on unsubstantiated hearsay.

Like his allegations about organizing the protest, Ford's allegations that Mckesson incited violence are based on unsubstantiated hearsay from unidentified sources. Specifically, Ford testified that:

> I didn't see him do it, but yes, **I did hear <u>them</u> say** that he was directing the crowd and that he was kind of agitating the crowd to do certain things, to commit crimes and stuff, as far as walking out into the road, but I wasn't standing there like other cops were.[31]

However, Ford could not name anyone who allegedly told him these things, stating "that's so long ago. I don't know who it all was. We had several agencies out there that wasn't even with Baton Rouge Police Department."[32]

Ford further explained that he heard these allegations "after the fact" from other police officers "just talking around the police department, they were talking about how DeRay was agitating the crowd to do certain chants, he was agitating the crowd to move out into the highway to block traffic, and so forth."[33]

---

[30] *Id.* at 298, n. 10 (emphasis added).
[31] Ex. "A" at p. 43, l. 22-25; p. 44, l. 1-3 (emphasis added).
[32] *Id.* at p. 44, l. 9-12.
[33] *Id.* at p. 44, l. 15-20.

But even these hearsay allegations fail to establish causation, because Ford admitted that "I don't remember anyone telling me that they saw him directly tell somebody to throw anything."[34]

### 3. Officer Ford offers no evidence that Mr. Mckesson caused his injuries.

Finally, Ford has admitted that numerous unidentified individuals were agitating the crowd. Any one of these people could have been responsible for Ford's injuries. Specifically, Ford testified that he "was on the Arrest Team, so we were arresting agitators."[35] "We were identifying agitators, and so we had people, like my sergeant, telling us when to go in to make the arrest."[36] Ford stated that the Baton Rouge Police Department was arresting people who had been identified as agitators and that "there was a lot of people" who were arrested.[37] Ford can offer no explanation for why Mckesson would be more responsible for his injuries than any one of these "agitators."

---

[34] *Id.* at p. 48, l. 13-15.
[35] *Id.* at p. 50, l. 23-24.
[36] *Id.* at p. 51, l. 21-23.
[37] *Id.* at p. 52, l. 21-25; p. 53, l. 1.

## **CONCLUSION**

Officer John Ford cannot prove that DeRay Mckesson "negligently organized" the July 9, 2016 protest in Baton Rouge or that Mr. Mckesson did anything to cause an unidentified assailant to throw a piece of concrete.  The Court should enter summary judgment in Mr. Mckesson's favor and dismiss Officer Ford's complaint.

Respectfully submitted,

*/s/ William P. Gibbens*
William P. Gibbens, 27225
SCHONEKAS, EVANS, McGOEY
& McEACHIN, LLC
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone: (504) 680-6050
Facsimile: (504) 680-6051
billy@semmlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was served upon opposing counsel of record this 31st day of January, 2024, by e-filing same into the CM/ECF system which will automatically deliver a copy of same to all counsel.

*/s/ William P. Gibbens*
WILIAM P. GIBBENS