UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| OFFICER JOHN FORD | * | CIVIL NO.: |
| --- | --- | --- |
| | * | |
| v. | * | 16-CR-742-BAJ-RLB |
| | * | |
| DERAY MCKESSON AND | * | |
| BLACK LIVES MATTER | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANT DERAY MCKESSON'S MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, comes defendant DeRay Mckesson, who respectfully submits the following reply in support of his motion for summary judgment.

Officer John Ford filed his lawsuit in November 2016, and in the past seven years has not identified a **single witness** who can testify that Mckesson organized or led the Baton Rouge protest. Ford offers his own, self-serving testimony that Mckesson told *some* individuals to follow him onto Airline Highway; but even if true, that alone is not enough to prove that Mckesson negligently organized and led the protest. And Ford's own Exhibit X—a video of Mckesson's unjustified arrest at the protest—shows that Mckesson was walking on the shoulder of Airline Highway, that he was not blocking traffic, that he was not engaged in any type of violence, that he was not giving orders to anyone, and that nobody around him was engaged in violence. Mckesson was simply a participant in the Baton Rouge protest, and the Court should grant summary judgment in his favor.

**A.   Only four of Officer Ford's 38 exhibits should be considered by the Court.**

As the Fifth Circuit has explained, a party can only dispute summary judgment with evidence that "can be presented in admissible form at trial."[1] Most of Ford's exhibits are

---

[1] *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019)

1

inappropriate for purposes of summary judgment because they would be inadmissible at trial for numerous reasons.

> 1. **The Court should not consider Officer Ford's late-disclosed, unauthenticated photographs.**

Exhibits 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, and 25 are unauthenticated photographs that Ford failed to produce in discovery. The discovery cutoff in this case was December 31, 2023.[2] However, Ford did not disclose these photographs until he attached them to his summary judgment opposition on February 22, 2024. For that reason alone, those exhibits would not be admissible at trial.

But even if these photographs had been timely disclosed, Ford has not identified any witness who could authenticate them. Ford listed nine potential witnesses in his discovery responses, and all these individuals are police officers.[3] Unless one of these nine police officers took the photographs (and they appear to be taken from online media sources), Ford will not be able to authenticate and introduce them at trial.

Finally, none of the photographs depict Mckesson, so even if they had been timely disclosed and could be properly authenticated, they would be excluded at trial as irrelevant.

> 2. **The Court should not consider Ford's late-disclosed newspaper and internet articles, all of which contain inadmissible hearsay.**

Exhibits 7, 19, 20, 21, 22, 23, 24, 27, 28, 29, 30, 31, 32, 33, 34, and 35 are newspaper articles, internet postings, and a Wikipedia article. Like the photographs, Ford disclosed these materials for the first time when he attached them to his summary judgment opposition.

---

[2] Rec. Doc. 106 (Scheduling Order)
[3] *See* Ex. "A," Ford's Written Discovery Responses, Response to Interrogatory No. 1.

Even if these exhibits had been timely disclosed, they consist entirely of inadmissible hearsay. "Generally, newspaper articles are 'classic, inadmissible hearsay' and are 'unusable to defeat summary judgment.'" *Hicks v. Charles Pfizer & Co. Inc.*, 466 F. Supp. 2d 799, 804 (E.D. Tex. 2005) (quoting *Roberts v. City of Shreveport,* 397 F.3d 287, 295 (5th Cir. 2005)).

### 3. The Court should not consider the Wiedeman declaration.

Exhibit 16 is a declaration by retired Baton Rouge Police Department Officer Randall J. Wiedeman. However, Ford did not disclose Mr. Wiedeman as a potential witness or identify him in any way before discovery closed on December 31, 2023.[4] Because Mr. Wiedeman was not disclosed as a potential witness, he will not be able to testify at trial. Accordingly, the Court should not consider his declaration for purposes of summary judgment. (Even if the Court were to consider Officer Wiedeman's declaration, it would do nothing to defeat summary judgment, because Officer Wiedeman says nothing about Mckesson.)

### 4. The Court should not consider Officer Ford's videos.

Finally, Ford filed four manual attachments: (1) a video showing "objects thrown," (2) an interview with Wolf Blitzer, (3) a video of a protest in Dallas, and (4) a livestream of Mckesson's arrest. Aside from the livestream of Mckesson's arrest (to which Mckesson does not object), the Court should not consider these videos.

First, none of these videos were provided in discovery. Second, with respect to the "objects thrown" and the Dallas protest videos, Ford has not identified any witness who could authenticate them, and neither of these videos depict Mckesson. Finally, although Mr. Mckesson's statements in the Wolf Blitzer video could *conceivably* be used at trial for impeachment purposes, it is not independently admissible and is rife with hearsay statements by Mr. Blitzer.

---

[4] *See id.*

3

Mckesson has no objection to the livestream of his arrest, and that video (Ford Exhibit X) entirely contradicts Ford's theory of the case. The first five minutes of the video[5] clearly show that Mckesson was walking along the shoulder of Airline Highway, that he was not blocking traffic, that he was not engaged in any type of violence, that he was not giving orders to anyone, and that nobody around him was engaged in violence.

**B.    Mr. Mckesson did not breach a duty of care to Officer Ford.**

Ford contends that Mckesson breached a duty of care because Mckesson (1) "participated in hundreds of protests in city streets;" (2) was "aware that prior BLM protest[s] were violent;" (3) "was a well-known distinguished leader of BLM;" (4) "organized and led the protest;" (5) "ordered protesters onto the highway;" (6) "threw a water bottle" at the Baton Rouge protest; and (7) lead protesters to block a public highway.[6] These statements are either false or irrelevant.

**1.    Officer Ford has no evidence that Mr. Mckesson threw a water bottle.**

Ford's contention that Mr. Mckesson threw a water bottle at the protest is fabricated from whole cloth. In fact, Ford testified just the opposite at his deposition:

> **I don't remember anybody telling me that they saw him throw anything**. I know I personally saw him with a water bottle in his hand, but **I never saw him throw a water bottle**. But as far as anybody saying they saw him throw anything, I don't have anybody that told me that that I – that I remember.[7]

Ford now contends that because he (allegedly) saw Mckesson holding a water bottle, "[o]ne may infer that Mckesson likely threw his bottle of water at police along with the other protesters."[8] But "summary judgment cannot be defeated through '[c]onclusional allegations and denials,

---

[5] The video runs for 16 minutes, and Mckesson was arrested at 5:01 on the video playback.
[6] Rec. Doc. 117 at p. 4-23.
[7] Rec. Doc. 111-1 (Ford depo) at p. 48, l. 3-9.
[8] Rec. Doc. 117 at p. 18.

4

speculation, **improbable inferences**, unsubstantiated assertions, and legalistic argumentation.'"[9] Here, given Ford's testimony that he did not see Mckesson throw anything and that nobody told him they saw Mckesson throw anything, the reasonable inference would be that Mckesson **did not** throw a water bottle.

        **2.     Officer Ford has no evidence that Mr. Mckesson "organized and led the protest."**

Section III(D) of Ford's opposition is titled "Mckesson organized and led the protest." In support of this argument, Ford mischaracterizes Mckesson's deposition testimony. Specifically citing Mckesson's deposition testimony at pages 38 (lines 4-6) and **57 (lines 13-23)**, Ford states:

> **According to Mckesson**, there was an activist from Baton Rouge who tweeted and by doing so reached out to his BLM team (Mckesson, Elzie, Packnett and Sinyangwe) **to help organize the protest**.[10]

However, that is not what Mckesson said. At page **57 (lines 13-23)** of his deposition Mckesson testified:

> Q.     You said there was an organizing team. Who was on the or what was the organizing team?
>
> A.     I didn't say team. There was a set of organizers who were in Baton Rouge and I don't know them personally. I met them that night and that was really our only time meeting each other.
>
> Q.     Okay. You said team of organizers. How do you know that those organizers called for you to come to Baton Rouge?
>
> A.     I don't have another way of saying it, but somebody from the Baton Rouge organizing community reached out to somebody on our team.[11]

---

[9] *Houston v. Texas Dep't of Agric.*, 17 F.4th 576, 582 (5th Cir. 2021) (citing *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017)) (emphasis added).
[10] Rec. Doc. 117 at p. 8-9.
[11] Rec. Doc. 117-3 (McKesson depo.) at p. 57, l. 13-23. Mckesson's testimony at p. 38 (l. 4-6) has nothing to do with the Baton Rouge protest but discusses how much time he spent at protests in 2014 and 2015.

Mckesson did not testify that anyone asked him or his team to organize the Baton Rouge protest or that he organized and led the protest. Instead, Mckesson simply received information about the time and place of the protest from someone else, posted that information on Twitter, and attended the protest: "I amplified the message that there would be protests in Baton Rouge. That is correct."[12]

Aside from the mischaracterized testimony, Ford points to no evidence that Mckesson "organized and led" the protest at all.

### 3. Even if true, ordering protesters onto the highway is not enough to defeat summary judgment.

The only piece of (disputed) evidence that Ford offers in opposition to summary judgment is his alleged recollection that Mckesson ordered individuals onto Airline Highway. After Ford initially denied that he saw Mckesson give *any* directions to *anyone* at the protest, his attorney helped him "remember" that he heard Mckesson tell some of the protesters to follow him into the road when he was questioned by his own attorney:

> Q. When we gave you your [answers to requests for] admissions, we asked you, did you hear him giving orders, and you said you did. So is your -- what's with your memory? Are you having memory problems? Are you confused?
>
> A. That's why I try to say I don't recall because I do, I have some memory problems, but, you know, I'm just trying to remember specifically, like, hearing him giving like -- I know that he -- **I did say that he told them to come out into the road, didn't I?**
>
> Q. Yes, you did.
>
> A. Okay. Well, that's -- **that's the only time then.** I'm sorry. I do recall that, but I don't -- **I don't recall any other specific orders given, just him, you know, having them follow him, you know, into the road and stuff like that.**[13]

---

[12] *Id.* at p. 72, l. 9-11.
[13] Rec. Doc. 111-1 (Ford depo) at p. 97, l. 3-21 (emphasis added).

As is mentioned above, this testimony is contradicted by Ford's Ex. X, which shows that Mckesson was walking along the shoulder of Airline Highway, that he was not blocking traffic, that he was not engaged in any type of violence, that he was not giving orders to anyone, and that nobody around him was engaged in violence.

However, even accepting Ford's allegation as true, Ford cannot explain how simply leading individuals onto the road would cause an unidentified individual to hit him in the face with a piece of concrete. Indeed, even the Fifth Circuit explained that the alleged "highway obstruction" alone is not enough to prove Ford's case:

> Next, Mckesson protests that the "specific tortious activity" he directed is, at most, obstructing a public highway, that the unidentified demonstrator's assault on Doe is not a natural consequence of that tortious activity, and that the First Amendment therefore does not allow State law to hold him liable for that unrelated result. According to Mckesson, the prohibition on highway obstruction is principally concerned with traffic safety, not police safety. This objection misunderstands the precise tortious activity for which Doe seeks to hold Mckesson liable. **Doe does not assert highway obstruction as a tort *per se*. Rather, he asserts that Mckesson's direction of the protesters to obstruct Interstate 12 is *evidence* that Mckesson breached his duty to refrain from creating the conditions in which it is likely that a third party will injure someone by an unlawful act**.[14]

The Fifth Circuit further explained that:

> Of course, **this is not Doe's only evidence that Mckesson breached his duty of care**. As explained above, Doe also alleges, among other things, **that Mckesson organized the protest** to begin in front of the Baton Rouge police station; that Doe did nothing to prevent the demonstrators from looting the grocery store and throwing water bottles at the police, despite **Mckesson's exercising some amount of direction and control over the protest**; and that Mckesson had participated in similar protests across the country, which had also resulted in violence to others and damage to property.[15]

---

[14] *Doe v. Mckesson*, 71 F.4th 278, 298 (5th Cir. 2023)(emphasis added).
[15] *Id*. at 298, n. 10 (emphasis added).

Accepting Ford's self-serving testimony about the highway obstruction as true, this one piece of evidence is not enough to carry Ford's burden of proof, considering (1) the absence of any evidence that Mckesson organized the protest, led the protesters, or exercised some amount of direction and control over the protest and (2) Ford's admissions that he did not see or hear Mckesson incite violence.

    **4.    Mckesson's participation in the Black Lives Matter movement and in other protests does not defeat summary judgment.**

Ford also suggests that Mckesson is responsible for his injuries because (1) Mckesson is a "well known distinguished leader of BLM," (2) Mckesson participated in other protests where he "frequently witnessed police using force in response to the protesters" and (2) Mckesson knew that "prior BLM protests were violent." These allegations do nothing to cure Ford's failure to provide evidence that Mckesson was a leader of the *Baton Rouge* protest or exercised control over the crowd at that protest.

Respectfully submitted,

*/s/ William P. Gibbens*
William P. Gibbens, 27225
SCHONEKAS, EVANS, McGOEY
& McEACHIN, LLC
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone: (504) 680-6050
Facsimile: (504) 680-6051
billy@semmlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was served upon opposing counsel of record this 6th day of March, 2024, by e-filing same into the CM/ECF system which will automatically deliver a copy of same to all counsel.

*/s/ William P. Gibbens*
WILIAM P. GIBBENS