UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOHN FORD                                                          CIVIL ACTION

VERSUS

DERAY MCKESSON, ET AL.                                NO. 16-00742-BAJ-RLB

RULING AND ORDER

Plaintiff John Ford, a Baton Rouge Police Department officer, was on duty at a demonstration in Baton Rouge on July 9, 2016, when he was struck by a heavy object thrown by an unidentified demonstrator. Ford sued Defendant DeRay Mckesson, now the sole remaining Defendant, alleging that Mckesson negligently organized and led the protest and was therefore liable under Louisiana tort law for Ford's injuries. (Doc. 101, Amended Complaint). Now before the Court is Defendant's **Motion for Summary Judgment (Doc. 109, the "Motion")**, which argues that Plaintiff's action must be dismissed because the summary judgment evidence shows that Defendant did not organize the protest, breached no duty to Plaintiff, and was not the cause-in-fact of Plaintiff's injuries. Plaintiff opposes the Motion. (Doc. 117). For the reasons that follow, Defendant's Motion will be granted, and Plaintiff's action will be dismissed with prejudice.

I. BACKGROUND

A. Procedural History

Plaintiff initiated this suit on November 7, 2016, naming as Defendants DeRay Mckesson and "Black Lives Mater," described as an "unincorporated association." (Doc. 1). In September 2017, the Court dismissed the suit, concluding that "Black

Lives Matter" is a "social movement," not the sort of entity that may be sued in federal court, and that the claims against Mckesson were defeated by the rule set forth in *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 908 (1982), governing civil liability for the wrongful acts of others committed "in the context of constitutionally protected activity." (Doc. 71 at 2, 10). Because Plaintiff alleged no facts demonstrating that Mckesson "authorized, directed, or ratified specific tortious activity," the Court held that the First Amendment precluded state law damages liability. (*Id.* at 8 (quoting *Claiborne*, 458 U.S. at 927 (quotations omitted)).

In an initial 2019 opinion, *Doe v. Mckesson*, 922 F.3d 604 (5th Cir. 2019), a second one on rehearing, *Doe v. Mckesson*, 935 F.3d 253 (5th Cir. 2019), and a final one issued with a dissenting opinion, the U.S. Court of Appeals for the Fifth Circuit reversed only the dismissal of Mckesson, holding that he could be liable in negligence because when he allegedly led protesters into the street, a criminal act in Louisiana, it was "patently foreseeable" that police would respond "by clearing the highway and making arrests," a development that in turn carried a "foreseeable risk" that someone would respond violently, *Doe v. Mckesson*, 945 F.3d 818, 827 (5th Cir. 2019). For this reason, the Fifth Circuit opined that Plaintiff had plausibly alleged that Mckesson "failed to exercise reasonable care in conducting his demonstration" and that this breach was a "cause-in-fact of Plaintiff's injury." *Id.* Notably, Mckesson has repeatedly denied that he organized the Baton Rouge protest or led any protesters there. (*E.g.*, Doc. 109-1 ¶ 1).

The U.S. Supreme Court vacated the Fifth Circuit's decision and remanded so that the Fifth Circuit could certify questions of law to the Louisiana Supreme Court including, among others, "whether Mckesson could have breached a duty of care in organizing and leading the protest and . . . whether [Plaintiff] has alleged a particular risk within the scope of protection afforded by the duty, provided one exists." *Mckesson v. Doe*, 592 U.S. 1, 5 (2020). The Louisiana Supreme Court accepted certification and issued an opinion answering that a protest leader could be sued for negligence "under the facts alleged in the complaint." *Doe v. Mckesson*, 2021-00929 (La. 3/25/22), 339 So. 3d 524, 526.

Following this, the Fifth Circuit issued a new decision permitting Plaintiff's negligent protest claims against Defendant. *See Doe v. Mckesson*, 71 F.4th 278, 286 (5th Cir. 2023), *cert. denied, Mckesson v. Doe*, 601 U.S. ___, 3 (2024). On remand, Plaintiff filed an amended complaint naming only Mckesson as Defendant, (Doc. 101), and in February 2024, Defendant filed a Motion for Summary Judgment, (Doc. 109). Plaintiff opposed the Motion. (Doc. 117). Before the Court could rule, Defendant sought and was granted a stay pending the resolution of his petition for certiorari to the Supreme Court appealing the Fifth Circuit's 2023 decision. (Doc. 123). The petition was denied on April 17, with Justice Sotomayor dissenting. *Mckesson*, 601 U.S. at 1. (Doc. 125). For the reasons that follow, the stay will be lifted, and Defendant's Motion for Summary Judgment will be granted.

3

## B. Summary Judgment Evidence

The facts set forth below are drawn from the parties' competing statements of material fact, and the competent, relevant, summary judgment evidence submitted in support of these pleadings.[1]

On July 9, 2016, Defendant and hundreds of other individuals attended a protest in Baton Rouge, Louisiana, in the aftermath of the death of Alton Sterling.[2] Officer John Ford claims that he was injured during that protest by an unknown

---

[1] Plaintiff submitted 38 exhibits in support of his opposition to Defendant's Motion and did not disclose *a single one* to Defendant in discovery. In addition to this apparent and unexcused violation of numerous discovery rules in the Federal Rules of Civil Procedure, each possibly subject to sanctions, *see* Rule 37, Plaintiff's submission suffers from significant admissibility issues.
   A party can only dispute summary judgment with evidence that "can be presented in admissible form at trial." *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019). Plaintiff's problematic exhibits include, among others, dozens of photographs taken by unidentified individuals with no suggestion that Plaintiff would be able to successfully authenticate the photos at trial; newspaper articles, internet posts, and a Wikipedia article, all of which constitute inadmissible hearsay, *see Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005); a declaration by a retired Baton Rouge Police Department Officer that does not mention Defendant; and four videos, including a video filmed by an unidentified individual that does not depict Mckesson, an interview of Mckesson on CNN that does not specifically mention the Baton Rouge protest, and a video of a completely different protest in Dallas, Texas.
   Plaintiff's submission evinces a flagrant unwillingness to abide by the Federal Rules and the Court's Local Rule 56. Most of Plaintiff's exhibits, even if ultimately deemed admissible, are irrelevant to the issues raised in Defendant's Motion. Despite these errors, the Court will not allow counsel's shortcomings to short-circuit its adjudicatory role, and this case, now seven years old, demands resolution. Accordingly, the Court has conducted an independent review of the summary judgment evidence and sets forth the *relevant* evidence in this Order. *E.g., Berry v. Williams*, No. CV 20-599-SDD-RLB, 2022 WL 2073079, at *5 (M.D. La. May 23, 2022) (Bourgeois, M.J.) (exercising discretion to review plaintiff's evidence despite plaintiff's failure to conform his summary judgment opposition to Local Rule 56), *adopted*, 2022 WL 2070884 (M.D. La. June 8, 2022) (Dick, C.J.).

[2] Sterling, an African American man, was shot and killed during an encounter with Baton Rouge police officers on July 5, 2016.

4

assailant who hit him in the face with a piece of concrete. (Doc. 101 ¶ 42; Doc. 117-2 at 54:1–4).

According to Defendant, there is "no evidence that [Defendant] organized the protest held in Baton Rouge, Louisiana on July 9, 2016." (Doc. 109-1 ¶ 1). Plaintiff denies this, citing to a section of his brief in opposition to summary judgment. (Doc. 117-1 ¶ 1 (citing to Doc. 117 at 7–9)). That section, entitled "Mckesson organized and led the protest," references a "tweet of the location and time of the protest" that Defendant acknowledged "re-tweet[ing]." (*Id.* at 7, 9).[3] The section also cites deposition testimony about the organizing of the protest, in which Defendant said that he did not know the organizers personally, and only met them on the night of the protest. (*Id.* at 9 (citing Doc. 117-3 at 16)).

As for Plaintiff's own recollection of the protest, he testified that he did not "hear" Defendant giving any orders during the protest, although he heard Defendant "[tell protesters] to come out into the road." (Doc. 117-2 at 96:10–14, 97:13–14). Finally, Plaintiff submitted a video filmed in part by Defendant during the protest. (Doc. 117 (Manual Attachment X), *hereinafter* "Livestream Video"). In the five minutes of the video before Defendant's arrest, Defendant in no way blocks traffic, engages in violence, or gives orders to anyone. (*Id.*). Indeed, Defendant appears to be walking in the middle of the protest rather than at the head of it. (*Id.*). Based on the

---

[3] The "Retweet" feature of X, formerly known as Twitter, allows a user to quickly share another user's post. The content looks the same as the initial tweet but will be distinguished by the Retweet icon and the phrase "[Username] Retweeted" at the top of the post to indicate that the post is a Retweet.

5

competent summary judgment evidence, and in spite of Plaintiff's claims to the contrary, it is apparent that Defendant did not organize or lead the protest. Nor will a single retweet—the only connection between Defendant and the organization and leadership of the protest—give rise to the type of liability contemplated by Plaintiff here.

Next, according to Defendant, he "did not engage in any acts of violence at the protest." (Doc. 109-1 ¶ 2). Plaintiff attempts to rebut this, responding that Defendant "likely threw his water bottle at police," (Doc. 117-1 ¶ 2), and citing to briefing in which Plaintiff argues that because police officers and Plaintiff saw Defendant retrieve a bottle of water, "[o]ne may infer that [Defendant] likely threw his bottle of water at police," (Doc. 117 at 18). Plaintiff urges this absurdly speculative inferential leap despite Plaintiff's own testimony that "[he] never saw [Defendant] throw a water bottle" and nobody "told [him]" Defendant had done so. (Doc. 111-1 at 11:3–9). Numerous run-of-the-mill scenarios come to mind well before a conclusion that Defendant threw his water: Defendant could have given the bottle to another person, or put it in a pocket, or thrown it away in a trash can after drinking it. Put simply, Plaintiff's "evidence" on this issue is not evidence at all, but idle speculation, and the Court has repeatedly warned that "summary judgment is about evidence, and that a party that fails to direct the Court's attention to any evidence supporting his claims cannot carry his burden of showing a genuine, material dispute." *Johnson v. Cooper T. Smith Stevedoring Co., Inc.*, 610 F. Supp. 3d 867, 877 (M.D. La. 2022), *aff'd*, 74 F.4th 268 (5th Cir. 2023). Lacking any evidence whatsoever for his claim, Plaintiff

6

asks the Court to make an outlandish inference regarding Defendant's behavior and accept this inference as fact for purposes of summary judgment. The Court will do no such thing. *See Houston v. Texas Dep't of Agric.*, 17 F.4th 576, 582 (5th Cir. 2021) ("Summary judgment cannot be defeated through conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." (quotations and alterations omitted)). Nothing produced by Plaintiff shows that Defendant engaged in any acts of violence at the protest.

Finally, Defendant states that he "did not direct anyone to commit acts of violence at the protest." (Doc. 109-1 ¶ 3). Plaintiff attempts to rebut this as well, testifying that Defendant "led the protestors to block the public highway." (Doc. 117-1 ¶ 3). Notwithstanding the failure of Plaintiff to respond to Defendant's undisputed assertion, Plaintiff's response does raise a dispute of sorts: Plaintiff testified that Defendant "led [protesters] a couple of times out into the road." (Doc. 117-2 at 88:15–16). Additionally, after first admitting that he "didn't hear" Defendant give any orders personally, (*id.* at 96:6–14), Plaintiff later claimed that he "personally heard" Defendant tell people to come into the road. (*Id.* at 98:2). As the Court explains below, however, while this may be a disputed issue of fact, it is not material for summary judgment purposes. In other words, that Defendant may have encouraged some protesters into the road at some point during the protest is not sufficient to hold him liable in negligence for Plaintiff's injuries.

7

## II. LAW AND ANALYSIS

### a. Standard

The summary judgment standard is well-set: to prevail, Defendant must show that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making this assessment, the Court must view all evidence and make all reasonable inferences in the light most favorable to Plaintiff—the non-moving party. *Owens v. Circassia Pharms.*, Inc., 33 F.4th 814, 824 (5th Cir. 2022). Even so, under the Federal and Local Civil Rules, Plaintiff must counter with evidence to support his claims: "A non-movant will not avoid summary judgment by presenting speculation, improbable inferences, or unsubstantiated assertions." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quotation marks omitted); *see also* M.D. La. Local Rule 56. To the point, summary judgment is required if Plaintiff fails to "produce any summary judgment evidence on an essential element of [his] claim." *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990).

### b. Discussion

#### i. Plaintiff's claim fails under Louisiana law

The origin of Plaintiff's negligence claim is Louisiana Civil Code article 2315.[4] That article provides that "[e]very act whatever of man that causes damage to

---

[4] When a federal court is sitting in diversity, as the Court is here, it is "obligated to apply the substantive law of the forum state." *Chevron Oronite Co., L.L.C. v. Jacobs Field Servs. N. Am., Inc.*, 951 F.3d 219, 225 (5th Cir. 2020) (quotations omitted).

8

another obliges him by whose fault it happened to repair it." Louisiana has adopted a "duty-risk" approach to negligence. Under that approach, a plaintiff must prove five elements: "(1) the plaintiff suffered an injury; (2) the defendant owed a duty of care to the plaintiff; (3) the duty was breached by the defendant; (4) the conduct in question was the cause-in-fact of the resulting harm; and (5) the risk of harm was within the scope of protection afforded by the duty breached." *Doe v. Mckesson*, 945 F.3d 818, 826 (5th Cir. 2019) (collecting Louisiana authority).

Here, there is no dispute that Plaintiff suffered an injury. As for the second element, the Fifth Circuit has described the duty at issue as "a duty not to negligently precipitate the crime of a third party." *Mckesson*, 945 F.3d at 827. The Fifth Circuit held that Defendant breached that duty by allegedly leading and organizing the protest in a negligent way. *Mckesson*, 71 F.4th at 286. As for the cause-in-fact requirement, the Fifth Circuit explained that "[it]t is not enough that [Plaintiff] show that Mckesson breached his duty of care—he must also prove that Mckesson's actions were a necessary antecedent to [Plaintiff's] injuries." *Id.* at 292. This "tall task . . . will only be met in the exceptional cases where . . . the allegations support the inference that the leader's specific actions caused the plaintiff's injuries." *Id.* Nevertheless, the Fifth Circuit opined that Plaintiff's complaint plausibly alleged that "by leading the demonstrators onto the public highway and provoking a violent confrontation with the police, Mckesson's negligent actions were the 'but for' causes of Officer Doe's injuries." *Id.* at 289 (quotations omitted). As for the fifth element, according to the Fifth Circuit, "the risk of harm to [Plaintiff was] plainly within the

9

scope of protection afforded by the duty owed by [Defendant] here." *Id.* Again, however, the Fifth Circuit's numerous decisions in this case were issued at the motion-to-dismiss stage, when Plaintiff's well-pleaded allegations were accepted as true.

Now, at summary judgment, and despite the benefits of open and extensive discovery, Plaintiff has been unable to substantiate his claims with competent evidence.

With respect to duty—the second element of a Louisiana negligence claim—there is no evidence that Defendant "arranged for the protesters to meet in front of the . . . police station, [and] block entry to the station and access to the adjacent streets." (Doc. 101 ¶ 23). There is no evidence that Defendant was "directing the protesters" "at all times." (*Id.*). There is no evidence that Defendant "planned" the protest. (*Id.* ¶ 28). There is no evidence that Defendant "organized" or "staged" the protest. (*Id.* ¶¶ 29, 30). There is no evidence that Defendant "was in charge of the protests" or that "he was seen and heard giving orders throughout the day and night of the protests." (*Id.* ¶ 33). There is no evidence that Defendant "incited" violence or "criminal conduct" during the protests. (*Id.* ¶¶ 37, 48). There is no evidence that Defendant "ratified all action taken during" the protest. (*Id.* ¶ 43). In practically every way, Plaintiff's evidence has fallen short of his allegations. Because of this, and because Defendant cannot be liable for the organization and leadership of a protest he did not organize or lead, the Court finds that Defendant owed no duty to Plaintiff.

10

Plaintiff's claim also fails to establish cause-in-fact and breach. As described above, there is simply no evidence to support Plaintiff's core claims. Instead, all that is offered is Plaintiff's own self-serving, uncorroborated, and inconsistent testimony that Defendant led individuals onto Airline Highway. (*See* Doc. 117-2 at 88:15–16). This will not suffice for two reasons.

First, the Court is not required to accept as true a nonmovant's conclusory allegations, speculation, or unsubstantiated assertions of fact that are either entirely unsupported by the summary judgment record, or are supported by a mere scintilla of evidence. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir. 2003); *see Germain v. US Bank Nat'l Ass'n as Tr. for Morgan Stanley Mortg. Loan Tr. 2006-7*, 920 F.3d 269, 272 (5th Cir. 2019) ("Conclusional allegations, unsubstantiated assertions, and a mere 'scintilla' of evidence are insufficient to defeat summary judgment."); *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 227 (5th Cir. 2018) ("[S]elf-serving allegations are not the type of significant probative evidence required to defeat summary judgment . . . ." (quotation omitted)); *c.f. Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Second, and more importantly, Plaintiff cannot establish that merely leading some individuals onto the road at some point during a protest could cause an

11

unidentified person to hit Plaintiff in the face with concrete at some other time. The Fifth Circuit's theory of liability was premised on Mckesson's alleged leadership of the protest: if Mckesson had not negligently led the protest, Plaintiff would never have been injured. Now, with Plaintiff's original allegations regarding Mckesson's "leadership" reduced to a shred by discovery, the Court simply will not extend liability to Mckesson for the minor, disputed role that he played. Doing so would represent a major expansion of tort liability unsupported by precedent and would dramatically increase the liability faced by all protest participants—not just protest leaders—in protests across the Circuit. This in turn would impermissibly chill speech and restrict the right to protest. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 278 (1964) (limiting defamation liability for critics of public figures because under standard defamation, "the pall of fear and timidity imposed upon those who would give voice to public criticism is an atmosphere in which the First Amendment freedoms cannot survive"); *Counterman v. Colorado*, 600 U.S. 66, 76, 143 S. Ct. 2106, 2115–16 (2023) (explaining that potential civil liability is frequently restricted when broader liability could have a chilling effect on speech; listing cases).

The Fifth Circuit itself acknowledged that the act of blocking a road on its own would not suffice to establish liability here. Rather, directing protesters to obstruct the road would be "*evidence* that [Defendant] breached his duty," *Mckesson*, 71 F.4th at 298, but it would not be "[Plaintiff]'s only evidence that [Defendant] breached his duty." *Id.* at n.10. According to the Fifth Circuit, additional evidence that would be necessary to establish breach included evidence that:

12

> [Defendant] organized the protest to begin in front of the Baton Rouge police station; that [Defendant] did nothing to prevent the demonstrators from looting the grocery store and throwing water bottles at the police, despite [Defendant] exercising some amount of direction and control over the protest; and that [Defendant] had participated in similar protests across the country, which had also resulted in violence to others and damage to property.

*Id.* Although Defendant may have participated in similar protests in other places, none of the specific allegations regarding his role in *this* protest are supported by the evidence. In other words, Plaintiff's case for causation rests solely on Defendant's *possible* presence at other protests and his *possible* direction of some protestors into the road. The Court will not impose liability on a protest participant for the actions of an unidentified individual under these circumstances. *See Claiborne*, 458 U.S. at 920 ("Civil liability may not be imposed merely because an individual belonged to a group, some members of which committed acts of violence."). Again, the "tall task [of establishing causation] . . . will only be met in the exceptional cases where . . . the allegations support the inference that the leader's specific actions caused the plaintiff's injuries." *Mckesson*, 71 F.4th at 292. Nothing could be further from the evidence here. For these reasons, Plaintiff's claim fails on causation.

### ii. Plaintiff's claim fails under the First Amendment

Less than two weeks after the Fifth Circuit issued its 2023 opinion in this case, the Supreme Court decided *Counterman v. Colorado*, 600 U.S. 66 (2023). In *Counterman*, a criminal case in which the Court decided the *mens rea* necessary for the criminal charge of making true threats of violence, the Court made clear that the First Amendment bars the use of "an objective standard" like negligence for

13

punishing speech. *Id.* at 78, 79 n.5. The Court explained that "the First Amendment precludes punishment, whether civil or criminal, unless the speaker's words were intended (not just likely) to produce imminent disorder." *Id.* at 77 (citing *Claiborne*, 458 U.S. at 927–929) (quotations omitted)). Indeed, the Court has held that a subjective standard is required by the First Amendment in cases involving defamation, *see New York Times Co.*, 376 U.S. at 280, incitement, *see Hess v. Indiana*, 414 U.S. 105, 109 (1973) (*per curiam*), and obscenity, *see Hamling v. United States*, 418 U.S. 87, 122–123 (1974). Such careful treading "relates to what is often called a chilling effect. Prohibitions on speech have the potential to chill, or deter, speech outside their boundaries." *Counterman*, 600 U.S. at 75. "And an important tool to prevent that outcome" is to condition liability for speech on a showing of a culpable mental state. *Id.* (quoting *Speiser v. Randall*, 357 U.S. 513, 526 (1958)).

"Although the Fifth Circuit did not have the benefit of [the Supreme] Court's . . . decision in *Counterman* when it issued its opinion," this Court does. *Mckesson*, 601 U.S. at 3 (Sotomayor, J., dissenting from denial of cert.). As is clear from *Counterman*, the "negligent protest theory of a leader's liability for the violent act of a rogue assailant . . . clashes head-on with constitutional fundamentals." *Mckesson*, 71 F.4th at 286, 313 (quotations omitted) (Willett, J., concurring in part and dissenting in part). Under *Counterman*, Defendant cannot be held liable in negligence for actions taken while exercising his First Amendment freedoms. *Counterman*, 600 U.S. at 78, 79 n.5; *c.f. United States v. Ehmer*, 87 F.4th 1073, 1121 (9th Cir. 2023) (describing subjective *mens rea* as constitutional minimum under *Counterman*). But see

14

*Mckesson*, 71 F.4th at 297 (holding, pre-*Counterman*, that objective liability is sufficient under the First Amendment). For this reason, independently, Plaintiff's claim fails.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that the Order (Doc. 124) staying and administratively closing this case, originally entered on March 28, 2024, be and is hereby **VACATED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 120) be and is hereby **GRANTED**. Plaintiff's claim be and is hereby **DISMISSED WITH PREJUDICE**. Judgment will issue separately.

Baton Rouge, Louisiana, this 10th day of July, 2024

**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**